**In re RITZ–CARLTON OF D.C., INC., Debtor.**

**The TRAVELERS LIFE AND ANNUITY COMPANY, Appellant,**

v.

**RITZ–CARLTON OF D.C., INC., Appellee.**

**No. 88 Civ. 7729 (JMW).**

United States District Court, S.D. New York.

March 20, 1989.

---

Jeffrey L. Tanenbaum, Jeff J. Friedman, John J. Rapisardi, Weil, Gotshal & Manges, New York City, for Ritz–Carlton.

Robert W. Gray, Leo T. Crowley, Scot C. Gleason, Stephen K. Koo, Winthrop, Stimson, Putnam & Roberts, New York City, for Travelers Life and Annuity Co.

**MEMORANDUM AND ORDER**

WALKER, District Judge:

Before the Court are two issues on appeal from the United States Bankruptcy Court for the Southern District of New York. The issues arise out of protracted and involved Chapter 11 proceedings involving Ritz–Carlton of D.C., Inc. (RCDC), its owner Coleman, and two other small corporations owned by Coleman. Travelers Life and Annuity Company (Travelers) made loans totaling over $40 million principal amount to RCDC—all secured by RCDC's one material asset, the Ritz–Carlton of Washington (the Hotel). The Hotel is also security for a further $8.8 million in various disputed claims. The only available appraisal valued the hotel at $38 million.

On July 7, 1988, after nearly two years of proceedings before the bankruptcy court, Travelers moved the court pursuant to § 362(d) of the Bankruptcy Code to lift the automatic stay triggered by RCDC's petition that bars Travelers from foreclosing on the Washington Hotel,[1] or, in the alternative, to order RCDC to give Travelers adequate protection of its interest in the Hotel. Following a trial, the bankruptcy court denied the motion in its entirety. For the reasons stated below, this motion is remanded to the bankruptcy court for further proceedings consistent with this opinion.

*Discussion*

Section 362(d) of the Bankruptcy Code, which governs Travelers's motion, reads:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such a party in interest; or

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

---

1. *See* 11 U.S.C. § 362(a).

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

■ With respect to the denial of its motion to lift the automatic stay, Travelers argues that the bankruptcy court misapplied § 362(d)(2)(B), in not requiring RCDC to prove that an effective reorganization plan was *in prospect.*[2]

The Supreme Court recently addressed the debtor's burden under § 362(d)(2) in *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988). In this case, the Court declared:

> Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is "necessary to an effective reorganization." What this requires is not merely showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

(citations omitted and emphasis in the original).

Although this language is arguably dictum, the overwhelming majority of courts to face the issue, both before and after *Timbers*, has applied this "feasibility" test rather than a simple "necessity" test. *See e.g., In re 8th Street Village Limited Partnership*, 94 B.R. 993 (N.D.Ill.1988) ("[E]very appellate court that has considered the issue has held the feasibility standard is the proper standard to apply. . . . This court does not find any good reason to diverge from the circuit courts, and the majority of the district and bankruptcy courts, even if *Timbers* should be considered unbinding dictum."). *See also Homestead Savings & Loan Assoc. v. As-*

*sociated Investors Joint Venture*, 91 B.R. 555, 558 (Bankr.C.D.Cal.1988); *In re National Real Estate Limited Partnership II*, 87 B.R. 986, 990–91 (Bankr.E.D.Wis. 1988); *American State Bank and Grand Sports, Inc. (In re Grand Sports, Inc.)*, 86 B.R. 971, 974 (Bankr.N.D.Ind.1988); *In re Gulph Woods Corp.*, 84 B.R. 961, 972 (Bankr.E.D.Pa.1988); *In re Diplomat Electronics Corp.*, 82 B.R. 688, 692 (Bankr.S.D. N.Y.1988). *But see In re Rassier* 85 B.R. 524 (Bankr.D.Minn.1988) (Concedes that most courts advocate feasibility test but finds necessity test more in line with legislative history and underlying purpose of the Bankruptcy Code.).

The feasibility test does not require that the debtor show that its reorganization plan is confirmable. *First Agricultural Bank v. Jug End in the Berkshires, Inc. (In re Jug End in the Berkshires, Inc.)*, 46 B.R. 892, 902 (Bankr.D.Mass.1985); *Barclays Savings Bank of New York v. Saypol (In re Saypol)*, 31 B.R. 796, 803 (Bankr.S.D.N.Y.1983). A court may however analyze the debtor's plan "using the feasibility test as a guidepost . . . because [the plan] provides the basis for determining whether the debtor can successfully reorganize." *In re National Real Estate Limited Partnership II*, 87 B.R. at 991. The test thus is "whether the things which are to be done after confirmation can be done as practical matter." *In re Fenske*, 96 B.R. 244 (Bankr.D.N.D.1988) (citation omitted). The debtor's burden of demonstrating a reasonable possibility of a successful reorganization increases with time. *See Timbers*, 108 S.Ct. at 632–33; *In re Grand Sports*, 86 B.R. at 974 ("During the early stages of a proceeding, a less detailed showing may succeed. The same showing at a later time, however, may be insufficient.").

It is not clear from the bankruptcy judge's language in refusing to lift the stay whether he applied this test. At some points in the trial, the judge seemed to reject the feasibility test altogether. *See*

---

**2.** The party opposing the lifting of the automatic stay has the burden of proof with respect to all

issues other than on the debtor's equity in the property. 11 U.S.C. § 362(g).

8/25/88 T. at 299, 304.[3] At other points in the trial and in a prior hearing, the judge implied that he was aware of the *Timbers* "feasibility" standard. *See* 8/25/88 T. at 301; 7/21/88 T. at 46.

 Since this Court cannot determine whether the bankruptcy judge applied the appropriate standard in this case, the Court remands the motion with instructions that the court below make explicit findings as to whether an effective reorganization plan is in prospect. The court need not determine whether the reorganization plan is confirmable. It need only determine whether the components of the plan which are to be done after confirmation can be accomplished as a practical matter. In making such findings, the bankruptcy court should examine the reorganization plan in sufficient depth to assess its feasibility. *See, e.g., In re Grand Sports,* 86 B.R. at 976 (projected revenues found inadequate for confirmable plan); *In re Asheville Building Assocs.,* 93 B.R. 913, 917 (Bankr.W.D. N.C.1988) (plan to sell property for benefit of creditors found unrealistic; history of ownership indicated inability to reorganize); *In re Chandler & Chandler Motor Inns, Inc.,* 93 B.R. 755 (Bankr.N.D.Fla.1988) (validity of cash flow predictions and valuations examined).

 With respect to its alternative motion for adequate protection pursuant to § 362(d)(1), Travelers argues that the bankruptcy judge erred on the law in refusing to consider deterioration in the value of the Hotel, as a result of the accumulation of tax liens superior to its own security interest, between the dates of the petition and the present motion.

In *Timbers,* 108 S.Ct. at 629, the Supreme Court held that a secured creditor has the right to receive protection for any decline in the value of collateral during the automatic stay. "Adequate protection must be applied in light of the peculiar facts of each case and upon equitable considerations arising therefrom." *City National Bank v. San Clemente Estates,* 5 B.R. 605 (S.D.Cal.Bankr.1980) (quoting

H.R. 95–595, 95th Cong., 1st Sess. 339 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

The general rule is that for adequate protection purposes a secured creditor's position *as of the petition date* is entitled to adequate protection against deterioration. *See e.g., In re Datair Systems Corp.,* 42 B.R. 241, 243 (Bankr.N.D.Ill.1984); *Metropolitan Life Insurance v. Monroe,* 17 B.R. 934, 939 (D.Del.1982). Those cases that have applied adequate protection from the motion date have addressed those circumstances where a creditor might have watched the property deteriorate only to surprise the debtor with a crippling demand for adequate protection on the eve of confirmation of a reorganization plan. *See e.g., In re Hinckley,* 40 B.R. 679, 681 (Bankr.D.Utah 1984); *In re Adams,* 2 B.R. 313 (Bankr.M.D.Fla.1980). The payment of taxes hardly fits that mold.

Given the equitable nature of adequate protection, this Court must give substantial weight to the bankruptcy court's balancing of the equities. The judge's finding that appreciation of the property value compensated for the effect of the tax liens, as well as Travelers' ability to reapply for protection should the situation deteriorate further, militate strongly against reversal. However, because it appears that the bankruptcy judge did not consider the creditor's position *as of the petition date,* this motion should likewise be remanded for further consideration in light of the authorities cited above. Since considerable time has passed since the original trial of this motion, Travelers might wish to use the occasion of the remand to renew its request for adequate protection if recent developments in the Hotel's tax situation so warrant.

### Conclusion

Accordingly, this Court remands the case to the bankruptcy court for further proceedings consistent with the foregoing.

**SO ORDERED.**

---

3. Hereinafter "T." represents references to the transcript of the given hearing date.