In re CARDINAL CONGREGATE I, An Ohio Limited Partnership, Debtor.

Bankruptcy No. 2–89–05133.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Jan. 12, 1990.

Kenneth R. Cookson, Carlile, Patchen, Murphy & Allison, Columbus, Ohio, for debtor.

Michael R. Szolosi, Szolosi & Fitch, Columbus, Ohio, for Secured Lenders Group.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio.

David G. Heiman, Jones, Day, Reavis & Pogue, Columbus, Ohio.

Larry J. McClatchey, Emens, Hurd, Kegler & Ritter Co., L.P.A., Columbus, Ohio, for Mohinder Gupta and Limited Partners.

## OPINION AND ORDER ON MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the court upon a motion filed by Peoples Banking Company, The Peoples Banking & Trust Company, Guernsey Savings Bank, Hobart Federal Savings & Loan Association, Peoples Savings Bank, First Federal Savings Bank of Marion and James F. Kacsmar & Company, C.P.A.'s ("Kacsmar & Co.) (collectively the "Movants") seeking to dismiss the Chapter 11 petition filed by the Debtor or, in the alternative, for relief from the automatic stay. The Debtor, Cardinal Congregate I, an Ohio limited partnership (the "Debtor"), filed a memorandum contra to the motion, and the Movants subsequently filed a hearing memorandum which addressed only their alternative motion for relief from the automatic stay. The motion was heard December 14, 1989, following which the Court took this matter under advisement.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the

General Order of Reference entered in this District. This is a core proceeding which the Court may hear and determine under 28 U.S.C. § 157(b)(2)(G). The following constitute findings of fact and conclusions of law.

## I. PRELIMINARY FACTS

The Debtor is the owner of certain real property known as the Cardinal Retirement Village, Columbus East, which is located in Columbus, Ohio (the "Property"). The Property includes 121 units used as a congregate housing facility for senior citizens.

On March 19, 1984, the Debtor executed a Promissory Note for the sum of $3,500,000.00 payable to Cardinal Industries Mortgage Company ("CIMC"). The Promissory Note evidenced a loan (the "Loan") made by CIMC to the Debtor for that amount. The obligations of the Debtor under the Promissory Note are secured by a Mortgage Deed and Assignment of Rents (the "Mortgage") dated March 19, 1984. The Mortgage was recorded on March 22, 1984. The Mortgage granted CIMC a first lien on the Property and all personal property located thereon or related thereto (collectively the "Collateral"), including but not limited to, all rental income and revenue from the Property (the "Rents"). The security interest in personal property was also perfected by filings with the Secretary of State and the County.

In April, 1984, CIMC sold participating interests in the Loan to Movants Peoples Banking Company, The Peoples Banking & Trust Company, Guernsey Savings Bank, Hobart Federal Savings & Loan Association, Peoples Savings Bank, First Federal Savings Bank of Marion and to Civic Savings Bank (collectively the "Loan Participants"). Following the sale of these interests to the Loan Participants, CIMC retained no economic interest in the Promissory Note or the Loan, but continued to hold the Promissory Note and service the Loan. On June 8, 1989, through the demand of a majority of the Loan Participants, Kacsmar & Co. was appointed as servicer of the Loan to replace CIMC.

CIMC subsequently transferred and assigned the Promissory Note and Mortgage to Kacsmar & Co. by virtue of a Transfer of Lien dated June 22, 1989.

Under its terms, the Promissory Note was due and payable on April 1, 1989. The Promissory Note has not been paid and there is due and owing to Kacsmar & Co. and the Loan Participants the principal sum of $3,446,150.03, plus interest of $353,513.83 and late charges of $129,338.01 through December 14, 1989. The Debtor is also obligated to pay attorney's fees and miscellaneous expenses. The Promissory Note specified an interest rate of 13.75%, but after maturity a rate 2% greater or 15.75%. Based on these figures, the monthly payment originally required to amortize the Promissory Note was $40,778.94, but after April 1, 1989, the maturity date, this amount increased to $46,361.60.

On September 13, 1989, the Debtor filed its voluntary petition in this Court for relief under Chapter 11 of the Bankruptcy Code. Since that date, the Debtor has continued to operate the Property as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. On October 30, 1989, a stipulated order was entered temporarily authorizing the Debtor to use cash collateral.

On September 1, 1989, before the Debtor filed its petition, the Movants filed a foreclosure action in the Franklin County Common Pleas Court seeking to foreclose on their Mortgage against the Property. At the same time, the Movants also sought the appointment of a receiver to collect the Rents from the Property. The receivership motion was set for hearing on September 14, 1989, but was stayed by the filing of the Debtor's petition.

The Movants seek a dismissal of the Debtor's case pursuant to § 1112(b) of the Bankruptcy Code or, in the alternative, for relief from stay under both § 362(d)(1) and (d)(2).

## II. ISSUES

There are three issues before the Court for determination:

1. Have the Movants shown cause for dismissal of the Debtor's case for any of the reasons enumerated in 11 U.S.C. § 1112(b) or for a lack of good faith?

2. Have the Movants shown cause for relief from the automatic stay by the Debtor's failure to provide adequate protection of the Movants' interest in the Property within the meaning of 11 U.S.C. § 362(d)(1)?

3. Are the Movants entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(2) because the Debtor lacks equity in the Property and the Property is not needed for an effective reorganization?

## III. DISCUSSION

### A. *Dismissal Under 11 U.S.C. § 1112(b)*

The Movants argue that dismissal is proper under 11 U.S.C. § 1112(b)(1), (2) and (3) and because the Debtor did not file its petition in good faith. Apart from the question of good faith, there is little discussion directed to this remedy in the Movants' Memorandum In Support and, as previously noted, none whatsoever in their Hearing Memorandum. Nor was this branch of the motion alluded to during the December 14, 1989 hearing except for a brief mention in the Movants' opening statement. Despite this lack of attention, however, the Court will address, in turn, each of the reasons advanced by the Movants for dismissal.

▪ 11 U.S.C. § 1112(b)(1) provides as cause for dismissal a "continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." Under this paragraph, losses alone are not sufficient. In order for the Court to dismiss the case, the debtor's financial condition must be such as to permit a determination that there is no reasonable likelihood that the debtor will be rehabilitated. 5 L. King, *Collier on Bankruptcy*, § 1112.03 at 1112–15 (15th ed. 1989). The Court cannot conclude at this time that the Debtor has no reasonable probability of rehabilitation

and continuing losses or diminution of the estate were not shown. Therefore, this case will not be dismissed pursuant to § 1112(b)(1). Dismissal would be particularly inappropriate where, as in this case, the Debtor has shown a likelihood that its revenues will increase over the next few months because of the expected renewal of leases at a higher rent.

11 U.S.C. § 1112(b)(2) states that a case may be dismissed for "inability to effectuate a plan." The sole basis for the Movants' contention here appears to be their statement that they will refuse to consent to any plan and the Debtor will be unable to obtain confirmation of a plan under the cram down provisions of 11 U.S.C. § 1129(b). This is the same argument made by the Movants with respect to their motion for relief from stay under 11 U.S.C. § 362(d)(2). Given the fact that this argument was never specifically discussed within the context of dismissal, the Court feels it would be more appropriate to determine this issue in the context of relief from stay. Accordingly, this case will not be dismissed pursuant to § 1112(b)(2).

▪ 11 U.S.C. § 1112(b)(3) permits dismissal for "unreasonable delay by the debtor that is prejudicial to creditors." This provision must be read in conjunction with § 1112(b)(2) which allows dismissal for inability to effectuate a plan and 1112(b)(4) which allows dismissal based on the failure to propose a plan. 5 L. King, *Collier on Bankruptcy*, § 1112.03 at 1112–19 (15th ed. 1989). Because the exclusive period for the Debtor to file a plan of reorganization has not yet expired and because the Debtor stated its intention at the hearing to file such a plan as quickly as possible, the Movants simply cannot show any unreasonable delay by the Debtor that is prejudicial to them. Therefore, this case will not be dismissed pursuant to § 1112(b)(3).

▪ In addition to the enumerated causes for dismissal in § 1112(b), the Movants contend that a lack of good faith by the Debtor in filing its petition warrants dismissal as well. The Movants are correct in their position that lack of good faith may constitute "cause" under § 1112(b). How-

ever, their only bases for alleging a lack of good faith is that (1) the Debtor filed its Chapter 11 petition while their foreclosure suit and motion for appointment of a receiver were pending and (2) there is no realistic possibility of an effective reorganization.

With respect to the first contention, it is clear that the case law cited by the Movants in support of their motion is easily distinguishable. *In re Northland Construction Co.*, 560 F.2d 756 (7th Cir.1977), *Capital Management Co. v. Alison Corp. (In re Alison Corp.)*, 9 B.R. 827 (Bankr.S. D.Cal.1981) and *In re Dutch Flat Investment*, 6 B.R. 470 (Bankr.N.D.Cal.1980) all involved situations where the debtor corporations were formed immediately prior to the filing of a bankruptcy petition for the sole purpose of invoking the corporate reorganization provisions. The remaining case, *Albany Partners Ltd. v. Westbrook (In re Albany Partners, Ltd.)*, 749 F.2d 670 (11th Cir.1984), presented a situation where the debtor had deliberately chosen not to intervene in a state foreclosure proceeding, waited until the eve of the foreclosure sale to file its Chapter 11 petition, and failed to produce an unrecorded deed which purportedly conveyed the property to it from the defendant in the foreclosure action until some twenty-three days after the petition was filed. Neither of these situations is present here. The fact that the Debtor filed its petition on the eve of the hearing on the motion for appointment of a receiver does not by itself constitute grounds for dismissal.

■ The Movants' contention that lack of good faith justifies dismissal because the Debtor has no realistic possibility of an effective reorganization is also without merit. A court should reach the conclusion that there is no demonstrable ability to reorganize only upon the strongest evidentiary showing. 5 L. King, *Collier on Bankruptcy*, § 1112.03 at 1112–28 (15th ed. 1989). In this instance, the Movants have simply failed to make such a showing.

■ The Court of Appeals for the Sixth Circuit has held that factors relevant to a determination if a Chapter 11 petition has

been filed in good faith include whether the debtor has any assets, whether the debtor has an ongoing business to reorganize and whether there is a reasonable probability of a plan being proposed and confirmed. *In re Winshall Settlor's Trust*, 758 F.2d 1136 (6th Cir.1985). There is no question that the first two criteria are met here. The only issue is the reasonable probability of a plan being confirmed. Because the exclusive period has not yet run and the Debtor has not yet submitted its plan, the Court feels this question would be more appropriately addressed at a later time. Once the Debtor proposes its plan, the Movants will be free to oppose confirmation on the basis of the good faith requirement imposed by 11 U.S.C. § 1129(a)(3). Therefore, the Debtor's case will not be dismissed for lack of good faith.

### B. *Lack of Adequate Protection As Cause For Relief From Stay Pursuant to 11 U.S.C. § 362(d)(1)*

Section 362(d) of the Bankruptcy Code provides in relevant part:

(d) On request of a party in interest.... the Court shall grant relief from the stay provided under subsection (a) of this section....—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest.

11 U.S.C. § 362(d)(1).

■ The concept of adequate protection referred to in § 362(d)(1) is not precisely defined by the Bankruptcy Code. *See* 11 U.S.C. § 361. It is generally agreed, however, that in the context of relief from stay a secured creditor's interest is not adequately protected to the extent it is not receiving compensation for the decrease in the value of its security during the term of the stay. *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 370, 108 S.Ct. 626, 629, 98 L.Ed.2d 740 (1988).

■ The Movants argue in their Memorandum in Support that relief from stay under § 362(d)(1) is appropriate because (1) the Debtor has no equity in the Property and the value of the Property is decreasing

and will continue to decrease, and (2) the Debtor's failure to timely pay its real estate taxes has resulted in a tax penalty that remains unpaid. The Debtor denies that the value of the Property is decreasing or will decrease and further asserts that the real property tax problem has been corrected under the United States Trustee's guidelines for segregation of funds.

Assuming that the Movants' assertion of no equity is true, the evidence at the hearing did not show that the value of the Property is decreasing, or will decrease in the time required for reorganization. To the contrary, the Movants' own expert witness testified on cross-examination that the Property has not deteriorated or declined in physical condition since the filing of the bankruptcy petition. The Rents which serve as additional security are being paid to the Movants, net of operating expenses. Therefore, there is no lack of adequate protection for those Rents. Because no evidence was presented concerning the Debtor's real estate taxes, the Court will accept the Debtor's statement that the problem has been corrected. Therefore, having found both grounds under § 362(d)(1) to be without merit, the Court concludes that the value of the Collateral is adequately protected.

C. *Relief From Stay Pursuant to 11 U.S.C. § 362(d)(2) For Lack of Equity and Lack of Necessity of the Property for an Effective Reorganization*

Section 362(d) of the Bankruptcy Code further provides in relevant part:

(d) On request of a party in interest ... the Court shall grant relief from the stay provided under subsection (a) of this section....

(2) with respect to a stay of an act against property under subsection (a) of this section if—

(A) the debtor does not have equity in such property; and

(B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(2).

The Movants purport to meet this two-part test by asserting that (1) the Debtor or has no equity in the Property since the claim of the Loan Participants against the Debtor is greater than the fair market value of the Property and (2) the Property is not necessary for an effective reorganization because there is no reasonable likelihood that the Debtor will be able to reorganize.

The undisputed testimony of the Kacsmar & Co. representative, D. Michael Henner, showed that the claim of the Loan Participants against the Debtor is presently $3,933,111.87, including a principal amount of $3,446,150.03, interest of $353,513.13, late charges of $129,338.01, an appraisal fee of $4,000.00 and a title examination and report fee of $110.00. This total figure does not include attorney's fees to which the Loan Participants are entitled under the terms of the Promissory Note. At the close of the hearing, the Debtor's counsel stipulated the amount of attorney's fees claimed is approximately $50,000.00, but did not stipulate to the Loan Participants' entitlement to such fees. Apart from this stipulation, there was no evidence adduced at the hearing concerning attorney's fees. For the sake of argument, however, if the $50,000.00 in attorney's fees are added in, the total amount owed to the Loan Participants is approximately $3,983,111.87.

The testimony of the appraiser hired by the Movants, Alex E. Nagy ("Nagy") was that the fair market value of the Property was $3,690,000.00 as of November 10, 1989. Nagy used an income approach to arrive at this figure. Based on operating statements dated June 20, 1989, September 13, 1989 and October 31, 1989 and the actual rents given by the resident manager on November 10, 1989, Nagy calculated the total current rental income potential of the Property to be $1,075,260.00. Nagy then adjusted this figure downward by 10% to compensate for uncollected rents. The adjusted figure is $967,734.00. After adding in other income in the form of second person occupancies, retained application fees, guest meals and beauty shop rentals,

Nagy's final figure was $1,014,734.00. After deducting expenses of 60%, his figure for net operating income potential was $405,894.00. Nagy then utilized a capitalization rate of 11% to arrive at his fair market value of $3,690,000.00.

The Debtor disputed Nagy's 10% deduction for so-called uncollected rents since the current monthly figure constituted actual rents as provided by the resident manager rather than potential rents. Thus, according to the Debtor, the vacancy rate was already figured in and Nagy's subsequent deduction was improper particularly since there was uncontroverted testimony that there was virtually no problem with rent collections. The Debtor then utilized the same figures with the exception of the 10% deduction to come up with a fair market value of $4,080,945.00.

Even if the Court were to adopt the Debtor's opinion of value, there would be, at most, less than $100,000 equity in the Property. Since the Debtor's current net income is insufficient for the monthly payments necessary to amortize the Loan, it is clear that, if an equity cushion exists, it is dissipating. Therefore, the Court will find for the purposes of this motion that the Debtor has no equity in the Property at the present time.

The Movants offer three reasons for their proposition that there is no reasonable likelihood that the Debtor will be able to reorganize. First, they argue that there will be no impaired class which will accept any plan proposed by the Debtor as required by 11 U.S.C. § 1129(a)(10); and, therefore, the Debtor will not be able to proceed to confirmation under the cram down provisions of 11 U.S.C. § 1129(b). Second, they assert that the Debtor will not be able to propose a plan that will meet the fair and equitable test imposed by 11 U.S.C. § 1129(b). Third, they contend that the Debtor will be unable to use the Loan Participants' cash collateral without their consent after December 31, 1989, and that it is highly unlikely that the Debtor will be able to obtain other financing pending its attempts to obtain approval of any proposed plan.

The basis for the first assertion is twofold. First, the Loan Participants undoubtedly control the vote of their secured class. Second, any unsecured claim of the Loan Participants resulting from insufficiency in value of the Collateral may also control the vote of the general unsecured creditor class, as the votes of Cardinal entities with claims in that class would not be counted for the purposes of obtaining the acceptance of one impaired class. *See* 11 U.S.C. § 1129(a)(10). When the votes of these insider claimants are excluded, the Movants assert that the unsecured claim of the Loan Participants will exceed one-third of the total general unsecured debt and acceptance cannot be obtained for the class absent their consent. The accuracy of this assertion, however, is far from clear. Even if the unsecured claims of Cardinal affiliates are excluded on the basis that such affiliates are "insiders," the Movants' assertion is true only if it is assumed that the Loan Participants' claim will be undersecured and all general unsecured claims will be in one class. And because the Debtor has produced some evidence that the market value of the Property is increasing as income increases, the Court cannot conclude at this time that the Loan Participants' unsecured claim will be large enough to control the vote of the general unsecured creditor class. Nor can the Court determine that there will be only one class of general unsecured creditors or that the Loan Participants will not elect treatment of their claim under 11 U.S.C. § 1111(b).

The second assertion is that the Debtor will not be able to propose a plan that meets the fair and equitable test of 11 U.S.C. § 1129(b)(2)(A). The primary basis for that assertion is that any plan proposed by the Debtor could not provide the Loan Participants with "deferred cash payments totaling at least the allowed amount of [their] claim, of a value, as of the effective date of the plan, of at least the value of [their] interest in the estate's interest in [the] [P]roperty." 11 U.S.C. § 1129(b)(2)(A)(i)(II). The Movants correctly point out that an appropriate method for discounting payments to present value, as

required by this subsection, is to provide the Loan Participants with a discount factor, expressed as interest on their claim, throughout the payment period. Normally, the appropriate discount factor is the current market rate of interest for similar loans in the region. *Memphis Bank v. Whitman (In re Whitman)*, 692 F.2d 427 (6th Cir.1982). The Movants contend in this instance, however, that the contract rate of interest should be used or, if the Court should find the market rate of interest to be applicable, the rate for Martins Ferry, Ohio, where the largest Loan Participant is located, should be adopted rather than the lower market rate which prevails in the Columbus area.

Notwithstanding these assertions, the Court finds that case law in this circuit establishes that the Loan Participants would be entitled to a market rate of interest as a discount factor to be applied to their allowed secured claims. *Memphis Bank*, 692 F.2d at 431; *United States v. Arnold (In re Arnold)*, 878 F.2d 925 (6th Cir.1989). That rate will be influenced by rates of other lenders in the same market in the region. The Court believes that region is larger than the town of Martins Ferry. The Court will not determine at this time what that market rate must be at the time this Debtor proposes a plan for confirmation. However, the Debtor has come forward with probative evidence that many of its tenants may soon be paying higher rents which will increase the Debtor's income. According to its 1990 budget, the Debtor's net operating income will be $37,224.86 in January, 1990, and will increase to $42,279.00 by December, 1990. If these projections remain on target, by March, 1990, the Debtor's net operating income will be sufficient to make deferred cash payments at the 12.5% interest factor currently being used by the Martins Ferry institution as its market rate. Therefore, the Movants' assertion is premature that no plan proposed by the Debtor could satisfy the fair and equitable test in 11 U.S.C. § 1129(b). On these facts, the Court believes the Debtor should at least have the opportunity to obtain confirmation of a plan proposed within the exclusive period.

The Court similarly finds that the Movants' contention that the Debtor will be unable to obtain financing necessary to operate its facility pending approval of any plan is also premature. At the close of the hearing, counsel for the Debtor stated that a plan of reorganization would be filed prior to the expiration of the exclusive period in mid-January. Pending approval of such a plan, the Court agrees with the Debtor that, given the loss in value of the Property should the Debtor be unable to operate, it is unlikely that the Loan Participants will refuse to consent to any further use of their cash collateral or that the Court would not authorize such usage.

### III. CONCLUSION

Based on the foregoing, the Motion of Peoples Banking Company, The Peoples Banking & Trust Company, Guernsey Savings Bank, Hobart Federal Savings & Loan Association, Peoples Savings Bank, First Federal Savings Bank of Marion and James F. Kacsmar & Company, C.P.A., To Dismiss Or, In The Alternative, For Relief From Stay should be, and the same is, hereby denied.

IT IS SO ORDERED.