**In re BROAD ASSOCIATES LIMITED
PARTNERSHIP, Debtor.**

**Bankruptcy No. 5–89–01070.**

United States Bankruptcy Court,
D. Connecticut.

Feb. 28, 1990.

James Berman, Craig I. Lifland, Zeisler & Zeisler, P.C., Bridgeport, Conn., for debtor.

Grant T. Stein, Alston & Bird, Atlanta, Ga., Gregory W. Nye, Hebb & Gitlin, Hartford, Conn., for Pacific Mut. Life Ins. Co.

## MEMORANDUM AND ORDER ON MOTION FOR RELIEF FROM THE AUTOMATIC STAY

ALAN H.W. SHIFF, Bankruptcy Judge.

Pacific Mutual Life Insurance Company ("Pacific") moves for relief from the automatic stay under Code § 362(d)(1) and (2) or, in the alternative, to dismiss under § 1112(b). For the reasons that follow, Pacific is granted relief from the automatic stay under § 362(d)(2).[1]

## BACKGROUND

The debtor is a Connecticut limited partnership with two general partners, Morris J. Zakheim and 300 Broad Street Corporation, and twenty-seven limited partners. In December, 1986, the debtor purchased a commercial office building located at 300 Broad Street, Stamford, Connecticut (the "building"), from HAB Stamford Associates ("HAB"), a New York general partnership, for $8,000,000.00, subject to a $5,050,-000.00 note dated June 14, 1985 (the "Pacific note"). The Pacific note is secured by a first mortgage on the building; an assignment of the leases, rents, and profits of the building; and a perfected security interest in certain personal property of the debtor. The building is also encumbered by a $1,200,000.00 wrap-around mortgage held by HAB.

According to the unrefuted testimony of Bruce Larson, a Pacific senior portfolio manager, the debtor has failed to make the monthly payment on the Pacific note since August 1, 1988. In November, 1988, Pacific commenced a foreclosure action against the debtor in Connecticut Superior Court. On February 14, 1989, the state court entered a judgment of strict foreclosure and established September 6, 1989 as the debtor's law day.

On September 5, 1989, the debtor filed a petition under chapter 11 of the Bankruptcy Code. The parties have stipulated that on that date, approximately $5,900,000.00 in principal, interest, and fees was due on the Pacific note. On September 21, Pacific filed the instant motion for relief from the automatic stay or, in the alternative, to dismiss the case. On October 27, the debtor filed a Plan of Reorganization and a Disclosure Statement. On November 17, Pacific filed an election pursuant to Code § 1111(b)(1)(A)(i), thereby making its entire

---

1. The hearing on this matter was dedicated almost entirely to the motion for relief from stay under § 362(d)(2). Because I conclude that the motion is granted under that provision, it is not necessary to address Pacific's alternative grounds for relief.

claim secured under § 1111(b)(2).[2] On December 4, the debtor filed an Amended Disclosure Statement and an Amended Plan of Reorganization. On December 6, a scheduling order entered which provided that the hearing on the adequacy of the Amended Disclosure Statement was to be held on December 15 and that if the Amended Plan were adequately disclosed, *see* 11 U.S.C. § 1125(a), the confirmation hearing and the hearing on the instant motion would be held on January 11, 1990. On December 29, an order entered approving the Amended Disclosure Statement. On January 4, upon the request of the debtor, an order entered reassigning the confirmation and relief from stay hearings to February 21. On February 12, the debtor filed a modification to the Amended Plan (the "Pending Plan").

Under the Pending Plan, an entity known as Newco, which is controlled by Moses Marx, will purchase the building subject to the Pacific note. The Pending Plan is to be funded as follows: Marx through Newco will provide a $1,000,000.00 guarantee (to cover any deficiency in interest payments to Pacific and necessary improvements up to $310,880.00) in exchange for which he will receive at least a ninety percent equity share in Newco; the debtor's general partners will contribute up to $50,000.00 in consideration for up to a five percent equity share in Newco; and the limited partners will contribute up to $50,000.00 in consideration for up to a five percent equity share in Newco.[3]

The Pending Plan lists five classes:

*Class 1* consists of Pacific's secured claim. The debtor contends that Pacific's allowed secured claim is approximately $3,343,000.00, the debtor's estimate of the value of the building. Pacific will be paid the present value of $3,343,000.00 in equal quarterly installments to begin ninety days after the Distribution Date,[4] with interest at ten percent, and will retain its lien on the building until it is paid in full. Pacific is impaired and has rejected the Pending Plan.

*Class 2* consists of HAB's claim, which is treated as unsecured pursuant to Code § 506(a).[5] HAB does not have recourse against the debtor's general partners. The debtor estimates HAB's claim at $1,300,-000.00. HAB will receive five percent of the allowed amount of its claim on the Distribution Date and, if the building's cash flow is sufficient, a pro rata share for six years of all available net cash flow less a reserve of thirty-five percent for income taxes. HAB is impaired, it did not return its ballot, and it is deemed to have rejected the Pending Plan. *See* 11 U.S.C. § 1126(c);

---

**2.** Code § 1111(b) provides in part:

(1)(A) A claim secured by a lien on property of the estate shall be allowed or disallowed under section 502 of this title the same as if the holder of such claim had recourse against the debtor on account of such claim, whether or not such holder has such recourse, unless—

(i) the class of which such claim is a part elects, by at least two-thirds in amount and more than half in number of allowed claims of such class, application of paragraph (2) of this subsection. . . .

. . . .

(2) If such an election is made, then notwithstanding section 506(a) of this title, such claim is a secured claim to the extent that such claim is allowed.

The Pacific note specifies that Pacific does not have recourse against the debtor so that it was entitled to make the § 1111(b) election. *See* 11 U.S.C. § 1111(b)(1)(B)(ii).

**3.** To the extent that the general and limited partners do not contribute the full amount,

Marx will receive an additional .0001% equity interest in Newco for each dollar he contributes in their place. It is unclear what would happen to any equity share not purchased by the partners and Marx.

**4.** Paragraph 2.10 of the Pending Plan defines Distribution Date as "the later of the Effective Date or within twenty (20) days after the . . . entry of a final non-appealable order providing for the allowance of claims if an objection to a claim is pending on the Effective Date." Paragraph 2.11 defines Effective Date as "the date the order confirming the Plan becomes final and non-appealable."

**5.** Code § 506(a) provides in part:

An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

*In re Friese*, 103 B.R. 90, 91–92 (Bankr.S. D.N.Y.1989); *In re Townco Realty, Inc.*, 81 B.R. 707, 708 (Bankr.S.D.Fla.1987). *But see Heins v. Ruti–Sweetwater, Inc. (In re Ruti–Sweetwater, Inc.)*, 836 F.2d 1263, 1266–67 (10th Cir.1988).

*Class 3* consists of general unsecured creditors with recourse against the debtor's general partners. The debtor estimates the Class 3 claims at $24,000.00. Class 3 claims will be paid in full on the Distribution Date, and are not impaired.

*Class 4* consists of the debtor's limited partners, who will receive a pro rata share of a five percent interest in Newco on the Effective Date of the Pending Plan in exchange for their contribution of $50,000.00. Class 4 is impaired.

*Class 5* consists of the debtor's general partners, who will receive a pro rata share of a five percent interest in Newco on the Effective Date of the Pending Plan in exchange for their contribution of $50,000.00. Class 5 is impaired.

At a February 14 status conference, Pacific argued that because HAB had not accepted the Pending Plan, the debtor could not meet the requirement of § 1129(a)(10) that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider ...," and the Pending Plan could not be confirmed. In a February 20 telephonic status conference, the debtor stated that it would not go forward with the confirmation hearing on February 21, but would instead file a new plan which it claimed would be accepted by HAB.

At the February 21 hearing on the instant motion for relief from the automatic stay, Samuel Sonnenschine, president of 300 Broad Street Corporation, the debtor's corporate general partner, testified that on the basis of an agreement with HAB, the debtor would file a plan on February 23 (the "New Plan") that would increase the amount to be paid to HAB to eight percent of their allowed claim and that HAB would accept the New Plan.[6] Sonnenschine also testified that, other than a possible increase in the amount to be paid to Pacific, the New Plan would be identical to the Pending Plan.

### DISCUSSION

Code § 362 provides in part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

. . . .

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

. . . .

(g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—

(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and

(2) the party opposing such relief has the burden of proof on all other issues.

The parties have stipulated that the debtor has no equity in the building. Accordingly, the focus of this decision is on § 362(d)(2)(B), with respect to which the Supreme Court has stated:

Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is "necessary to an effective reorganization." See § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

---

6. The New Plan has not been filed to date.

*United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 632–33, 98 L.Ed.2d 740 (1988) (emphasis in original and citation omitted). As noted in *Travelers Life and Annuity Co. v. Ritz–Carlton of D.C., Inc. (In re Ritz–Carlton of D.C., Inc.)*, 98 B.R. 170, 172 (S.D.N.Y.1989), "[t]he debtor's burden of demonstrating a reasonable possibility of a successful reorganization increases with time."

### A.

■ At the time of the hearing on the instant motion the debtor did not have a confirmable plan pending, and Pacific argues that the court may only consider a plan which has been filed in determining whether the debtor has a "reasonable possibility of a successful reorganization within a reasonable time." The debtor argues that *Timbers* only requires that a plan be proposed and correctly points to the unlikelihood that a plan would be filed by a debtor within the first days after the commencement of a case. I agree with the debtor, but nonetheless find that its argument is unavailing in this case.

■ As of the hearing, the debtor had filed a plan, an amended plan, and a modification of the amended plan. During that period Pacific filed the instant motion, but agreed to a continuance beyond the thirty day relief period imposed by § 362(e) on the understanding that the debtor should have an opportunity to have a plan confirmed. *Pacific Mutual Exhibits* 3 and 8. Apparently anticipating that none of its previous plans could be confirmed, the debtor did not go forward with the two

previously scheduled confirmation hearings. The debtor now seeks a third opportunity to have its proposed New Plan confirmed and attempts to defeat Pacific's motion on that basis. By the debtor's logic, the granting of Pacific's motion could be delayed indefinitely. I conclude that as of the date of the hearing on the instant motion the debtor had had a reasonable time within which to propose a confirmable plan, that it failed to do so, that in the circumstances of this case that failure is evidence that there is no reorganization in prospect, and that Pacific's motion should be granted.

### B.

■ The same conclusion is reached even if the debtor's New Plan were to be considered. Courts in this circuit since *Timbers* have held that under the "feasibility" test, a debtor need not demonstrate that its proposed plan of reorganization is confirmable. *Carteret Savings Bank v. Nastasi–White, Inc. (Matter of East–West Assoc.)*, 106 B.R. 767, 774 (S.D. N.Y.1989); *In re Ritz–Carlton of D.C., Inc., supra*, 98 B.R. at 172. It is implicit in that test, however, that the proposed plan must avoid statutory flaws that would prohibit confirmation.[7] In addition, the debtor must prove that " 'the things which are to be done after confirmation can be done as a practical matter.' " *In re Ritz–Carlton of D.C., Inc., supra*, 98 B.R. at 172 (quoting *In re Fenske*, 96 B.R. 244, 249 (Bankr.D.N. D.1988)). Thus, even assuming that HAB consents to its treatment and that the New Plan is otherwise free from statutory defects that would bar its confirmation, I conclude that Pacific's motion should be

---

7. Pacific argues that it must be given the right to bid in its claim under § 1129(b)(2)(A)(ii). That subdivision provides that a secured creditor may be crammed down if the plan provides for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph.... The plain language of that provision makes it applicable only where a sale "free and clear of such liens" is contemplated. The sale under the debtor's Pending Plan and New Plan would not

be free and clear of liens. Further, § 1129(b)(2)(A) includes three methods for cramming down a secured creditor which are connected by "or". Code § 102(5) provides that " 'or' is not exclusive...." The legislative history to that section provides: "[I]f a party 'may do (a) or (b)', then the party may do either or both." On its face, § 1129(b)(2)(A) is disjunctive, and Pacific has not persuaded me that I should go beyond the plain language of the statute. Thus, if the debtor could meet the requirements of § 1129(b)(2)(A)(i), its inability to meet the requirements of § 1129(b)(2)(A)(ii) would not prevent confirmation.

granted because the debtor has failed to prove that it can perform its obligations under the New Plan.

As noted, Pacific has made an election under § 1111(b)(1)(A)(i), *see supra* note 2, and it is entitled to receive "deferred cash payments totaling at least" $5,900,000.00, the stipulated amount of its allowed claim. 11 U.S.C. §§ 1111(b)(2), 1129(b)(2)(A)(i)(II). The Pending Plan and the New Plan propose to pay Pacific's claim over a twelve year period. Pacific therefore would be entitled to payments of at least $491,666.66 per year.

The debtor relies upon the following evidence in support of its contention that the New Plan is feasible. First, the debtor offered testimony that it is paying the building's expenses as they become due. However, as disclosed in *Debtor's Exhibit A*, those expenses do not include any debt service.

Second, Sonnenschine testified that the guarantee together with the building's cash flow would be sufficient to fund the New Plan. Estimates of projected cash flow are technical in nature and ordinarily should be given by a qualified expert witness. *See* F.R.Evid. 702. In the absence of an objection, a nonexpert may give such an opinion, but without a proper foundation which demonstrates that the witnesses' opinion is based upon personal knowledge, rather than upon unfounded speculation or conjecture, it is accorded little weight. *See Snowbank Enter., Inc. v. United States*, 6 Cl.Ct. 476, 486 (1984); *In re Garsal Realty, Inc.*, 98 B.R. 140, 156 (Bankr.N.D.N.Y. 1989). Sonnenschine was not qualified as an expert. Although he is an accountant, no evidence was offered that his opinion was based upon an analysis of the potential cash flow of the building. He provided no detail or documentation in support of his naked assertion, and I find that his testimony was lacking in candor, self-serving, speculative, and entitled to no weight. Pacific's failure to object to Sonnenschine's opinion does not elevate it to the quality necessary to satisfy the debtor's burden of proof.

Even if I were to accept Sonnenschine's testimony as having any weight, it is contradicted by the debtor's expert's estimate of future cash flow. Pacific produced the debtor's original Disclosure Statement, *Pacific Mutual Exhibit 5*, to which the debtor attached a summary of an expert's valuation of the building. The Amended Disclosure Statement has not altered that analysis, and since the debtor has stated that the New Plan will be identical to the Pending Plan except for the treatment of HAB's claim, it is not anticipated that a new disclosure statement will accompany the New Plan. The debtor's expert's analysis includes an estimate of the building's projected net operating income for six years as ranging from $368,485.00 to $408,698.00, with an average of $389,022.33. On the basis of that opinion, there would be an average deficiency of $102,644.33 in the $491,666.66 minimum payment due each year under the New Plan. The only source of funds which might be used to make up this shortfall is the $1,000,000.00 Marx guarantee. Even assuming that the guarantee is in fact provided by Marx and that it can be used for that purpose, neither of which is conceded by Pacific, the guarantee would not be adequate. Since the New Plan provides that $310,880.00 of the guarantee will be available for improvements to the building, the amount available to pay Pacific is reduced to $689,120.00. Thus, the guarantee would be almost entirely consumed in the first six years, and unless the building were to experience a dramatic increase in net operating income, the debtor would not be able to make the required payment to Pacific in years seven through twelve. The debtor has offered no such evidence. To the contrary, the debtor's expert's valuation projects a decrease in net operating income of $28,633.00 from year five to year six, evidence of a downward trend.

## CONCLUSION

Pacific's motion for relief from the automatic stay is granted and IT IS SO ORDERED.