993 F.2d 881
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re AMBANC LA MESA LIMITED PARTNERSHIP, an Arizona Limited
Partnership, Debtor.
AMBANC LA MESA LIMITED PARTNERSHIP, an Arizona Limited
Partnership, Appellant,
v.
The RESOLUTION TRUST CORPORATION as Receiver for Western
Savings and Loan Association, F.A., Appellee.
 No. 92-15007.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 14, 1993.
Decided May 19, 1993.
 
 Before: GOODWIN, HUG and FLETCHER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Debtor Ambanc appeals the bankruptcy court's order, affirmed by the BAP, lifting the automatic stay as to the sole asset of the bankruptcy estate, an apartment complex in Mesa, Arizona. Ambanc appeals to this court on the ground that the bankruptcy court applied an incorrect legal standard in determining whether to lift the automatic stay. Alternatively, Ambanc argues that, even if the bankruptcy court did apply the correct legal standard, its factual findings were clearly erroneous and its decision to lift the automatic stay was an abuse of discretion. We affirm.
 
 Discussion
 
 3
 Section 362(d)(2) of the Bankruptcy Code provides that the court shall grant relief from the automatic stay of an act against property if "(A) the debtor does not have an equity in such property; and (B) such property is not necessary to an effective reorganization." The Supreme Court addressed the debtor's burden under § 362(d)(2):
 
 
 4
 Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral at issue is "necessary to an effective reorganization." What this requires is not merely showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization that is in prospect. This means ... that there must be "a reasonable possibility of a successful reorganization within a reasonable time."
 
 
 5
 United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 375-76 (1988) (citations omitted) (emphasis in original). In the present case, the parties stipulated that appellant has no equity in the property. The Resolution Trust Corporation ("RTC") was therefore entitled to relief from the stay if appellant failed to demonstrate that there was "a reasonable possibility of a successful reorganization within a reasonable time." Id. at 376.
 
 
 6
 Appellant presented the bankruptcy court with a plan of reorganization and the testimony of David Matloff, the chief financial officer of Ambanc's general partner, in support of the feasibility of the plan. The bankruptcy judge held that appellant had failed to meet the Timbers standard on the grounds that (1) the plan utilized unrealistically high projections of occupancy rates, (2) the interest rate on the RTC's secured claim supplied by the plan did not provide the RTC with the present value of its secured claim, and (3) the plan depended upon future contributions from limited partners which were purely speculative.
 
 
 7
 * The bankruptcy judge recognized that the Timbers standard was appropriate in this case. Cf. In re Ritz-Carlton of D.C., Inc., 98 B.R. 170, 172-73 (S.D.N.Y.1989) ("It is not clear from the bankruptcy judge's language in refusing to lift the stay whether he applied the test."). Nonetheless, appellant argues that the court improperly required appellant to meet the more rigorous standard applied at a confirmation hearing. See 11 U.S.C. § 1229.[1]
 
 
 8
 Timbers does not require that a debtor demonstrate that its plan for reorganization is confirmable. Ritz-Carlton, 98 B.R. at 172. However, a reorganization plan "provides the basis for determining whether the debtor can successfully reorganize." In re Nat'l Real Estate Ltd. Partnership II, 87 B.R. 986, 991 (Bankr.E.D.Wis.1988). A court must test "whether the things which are to be done after confirmation can be done as a practical matter." Ritz-Carlton, 98 B.R. at 172 (quoting In re Fenske, 96 B.R. 244 (Bankr.D.N.D.1988) (citation omitted)).
 
 
 9
 The factors on which the judge based his decision were relevant to a determination of whether an effective reorganization was in prospect. In re Northgate Terrace Apartments, Ltd., 126 B.R. 520, 524 (Bankr.S.D.Ohio 1991) (judge may grant relief from automatic stay if "the [plan's] projections are shown to be highly inaccurate or are fixed in a manner that makes operation of the Property unfeasible"). The projected occupancy rate of the apartment complex, anticipated cash contributions by the limited partners, and proposed interest rate were all integral to the success of the plan. We therefore find that the bankruptcy court applied the correct standard in determining whether to grant relief from the automatic stay.
 
 II
 
 10
 To survive a motion for relief from the automatic stay, Ambanc had to demonstrate the existence of a reasonable possibility of successful reorganization. Its proof need "not convince the Court that successful reorganization is certain, however." Id. at 526. The operative question is whether the plan's proposed interest rate, anticipated contributions by limited partners, and projected occupancy rate were "so unreasonable that reorganization is rendered unrealistic." Id. at 525.
 
 A. Interest Rate
 
 11
 The bankruptcy court determined that the appropriate rate of interest was the rate set by the original contract--11.125%--rather than appellant's projected rate of 9% for the first year and 10% thereafter. A hearing on whether to grant relief from an automatic stay is not the appropriate forum for a bankruptcy court to fine-tune the appropriate interest rate on the secured portion of a claim. "What is subject to scrutiny here is the Debtors' general ability to reorganize, not whether any particular plan will be confirmed." In re Ledgemere Land Corp., 125 B.R. 58, 65 (Bankr.D.Mass.1991); see In re Cardinal Congregate I, 113 B.R. 371, 378 (Bankr.S.D.Ohio 1990) (market rate determined at time that debtor proposes plan for confirmation). We find no evidence that the projected interest rate was so unreasonable as to subvert the possibility of a realistic reorganization.
 
 B. Contributions by Limited Partners
 
 12
 Appellant's proposed plan required additional capital contributions of $10,000 from at least 50% of the sixty limited "A" partners. At the time of the bankruptcy filing, the limited "A" partners had made contributions to the Partnership totaling over one million dollars. In determining the reasonableness of this projection, the bankruptcy court noted only that at the time of the hearing there were no collected or escrowed funds from the limited partners. However, this was irrelevant to a determination of whether there was a reasonable possibility of future capital contributions. There was no reason for any limited partner to comply with the reorganization plan at the time of the hearing because, at that time, the plan was merely an unconfirmed, and recent, proposal.
 
 C. Vacancy Rate
 
 13
 Ambanc projected an annual vacancy rate of 15% during the first year, with a 1% decrease each succeeding year. The bankruptcy court found this projection to be entirely speculative on the ground that the vacancy rate at the time of the hearing was closer to 35%. The question, again, is whether appellant's proposal was so unreasonable that reorganization was rendered unrealistic.
 
 
 14
 Appellant relies on Matloff's testimony to support its argument that, under the plan, the projections could be halved and still fund a successful reorganization. However, this claim suffers from at least two defects. First, Matloff did not testify that the plan provided for uncertainty. He merely claimed that, if the assumptions were cut in half, the RTC's share, as opposed to other creditors' shares, would not decline in value. Second, even if Matloff did testify as to the matter asserted by appellant, his statement is unsupported by the record.
 
 
 15
 Appellant also claims that the difference between the 35% vacancy rate at the time of the hearing (November 16) and the plan's projected rate of 15% is due to the lower vacancy rates that are common during Arizona's winter months. However, appellant fails to show any support in the record for this claim. The bankruptcy judge was not clearly erroneous in finding that the projected annual vacancy rate was overly optimistic.
 
 D. Conclusion
 
 16
 The bankruptcy court erred in its determination of the feasibility of the plan's proposed interest rate and its projected infusion of new capital from the limited partners. Appellant's "plan may be amended several times before it is formally proposed or confirmed," and appellant deserved an opportunity to amend its plan while the stay remained in effect so long as its plan was not "patently infeasible." Ledgemere, 125 B.R. at 65. However, the bankruptcy court was not clearly erroneous in its finding that the plan's proposed vacancy rate was unreasonable, and the feasibility of the proposed plan hinged on whether or not the apartment complex's operating results could be obtained. Cf. In re Chandler & Chandler Motor Inns, Inc., 93 B.R. 755, 756-57 (Bankr.N.D.Fla.1988) (likelihood of successful reorganization did not depend solely on attainability of operating results). We therefore find that the bankruptcy court did not abuse its discretion in granting relief from the automatic stay.
 
 III
 
 17
 The RTC seeks attorneys' fees on appeal pursuant to its Multi-Family Note and its Multi-Family Deed of Trust, Assignment of Rents and Security Agreement. Both documents provide that, in the event of a default, Ambanc is liable for any attorneys' fees. An award of attorneys' fees would nonetheless be premature at this point in time because of the unusual factual posture of this case.
 
 
 18
 A separate stay on the bankruptcy estate was granted pending resolution of this appeal, and, during this time, the debtor continued to proceed down the path toward plan confirmation. A plan for reorganization was confirmed by the bankruptcy court and is presently on appeal to the district court.[2] The decision whether the RTC is entitled to attorneys' fees must therefore await the district court's determination of the merits of the plan which was confirmed by the bankruptcy court.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We note that appellant timely raised the issue of the bankruptcy judge's alleged use of an incorrect legal standard. It is irrelevant whether appellant specifically identified the test used by the bankruptcy judge as the standard appropriate to a confirmation hearing
 
 
 [2]
 The record before us does not indicate the nature of the plan that was confirmed by the bankruptcy court. It is beyond the scope of this decision, for example, whether the debtor revised the original plan or whether there is persuasive evidence of the plan's feasibility. Therefore, our ruling should not be construed as reflecting on the merits of the plan that is before the district court, or as providing cause to deny the debtor a further stay pending the district court's decision