In re GRAND SPORTS, INC., Debtor.

AMERICAN STATE BANK, Plaintiff,

v.

GRAND SPORTS, INC., Defendant.

Bankruptcy No. 85–11595.

Proc. No. 87–1174.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

March 9, 1988.

William I. Kohn, South Bend, Ind., for plaintiff.

C. David Peebles, Fort Wayne, Ind., for defendant.

## ORDER

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court on Plaintiff's complaint for relief from stay. The complaint sought not only relief from the automatic stay but also an injunction against the Debtor's use of cash collateral. Upon filing the complaint, Plaintiff also filed a request for a temporary restraining order, prohibiting the use of cash collateral. This request was denied, without a hearing, in part because the specific requirements of the Bankruptcy Code (11 U.S.C. § 363(c)(2) & (4)) and the court's order appointing debtor as debtor-in-possession already prohibited the use of cash collateral and required that it be placed in a segregated account.

Plaintiff then filed a motion for preliminary injunction, which came before the court for a hearing January 15, 1988. At the hearing, Debtor conceded that Plaintiff held liens upon what was or would become cash collateral and that cash collateral had been used, without either the consent of the creditor or permission of the court. Accordingly, Plaintiff's motion for preliminary injunction was granted by an order of that date. That order, *inter alia*, prohibited the Debtor from using or disposing of cash collateral, until such time as the court had decided the issues raised by Plaintiff's complaint.

The complaint came before the court for a pre-trial conference on January 19, 1988. At the pre-trial, Debtor's counsel tendered an application for authority to use cash collateral. Trial was subsequently held, on both the complaint and debtor's application, on the afternoon of January 29, 1988. Plaintiff/Bank was represented by its counsel, Mr. Lynn Tyler. Defendant/Debtor was represented by its attorney, Mr. C. David Peebles.

In addition to an injunction prohibiting the use of cash collateral, the Bank's complaint also seeks relief from the automatic stay pursuant to § 362(d) of the United States Bankruptcy Code (11 U.S.C. § 362). It argues that it is entitled to relief under both of the alternative provisions of that section. Pursuant to § 362(d)(1), it claims that it is not adequately protected. Pursuant to § 362(d)(2), it contends that the Debtor has no equity in the property securing payment of its claim and that such property is not necessary to an effective reorganization.

Consideration of relief from the automatic stay, because of either a lack of adequate protection or under § 362(d)(2), first requires the court to determine the value of a creditor's collateral. Adequate protection demands that this value be preserved. Beyond this, if the value of the collateral exceeds the amounts due on account of liens against it, so that the debtor has equity in the property, relief under subparagraph (d)(2) is not appropriate.

Debtor does not dispute that the Bank is undersecured or that it has no equity in the property securing its claim. This fact is borne out by the record in this proceeding. The Bank, admittedly, holds perfected liens upon Debtor's accounts receivable, inventory, and raw materials, together with machinery and equipment. Schedule A–2 places the Bank' claim slightly in excess of $580,000.00. The market value of its collateral is placed at slightly less than $475,-000.00.

Schedule B–2 seems to indicate that something has been omitted from the collateral value placed on Schedule A–2. Debtor's machinery is given a scheduled value of approximately $252,900.00. The value of the inventory and raw materials is placed at approximately $224,000.00. In a Rule 2004 exam, Debtor's president, Mr. George Reed, indicated that the value of these items increased slightly following the petition, to approximately $231,000.00. Of this latter total, raw materials and supplies accounted for $158,200.00, while finished product accounted for approximately $75,-000.00. Debtor's accounts receivable are

placed at approximately $127,600.00 on Schedule B–2.

If we consider only the scheduled value of the Bank's collateral, or even the more recent value as testified to by Mr. Reed, it appears the Bank is oversecured, albeit only marginally so. Our inquiry into valuation, however, must not end with a facial acceptance of raw numbers. These numbers can for many reasons be illusory. An example of this can be found by an examination of the nature and quality of debtor's receivables. Of the more than $122,000.00 it shows being due Debtor, deposition Exhibit "4" indicates that most of these receivables are so old as to make their collectability doubtful. Of the total, only slightly more than $8,000.00 was less than sixty days old at the end of 1987. Indeed, the vast majority of these receivables are not only over sixty days old, but are at least twice this age. The court's review of Exhibit "4" indicates that more than $89,300.00 of all amounts owed Debtor represent invoices issued before September of 1987. Beyond this, the frequency and amount of many of the receivables seem to indicate that they do not represent the sale of product but, rather, interest charges to customers on account of past due invoices. Of the receivables listed on Exhibit "4" which are less than 120 days old, less than $7,000.00 appear to represent amounts due on account of product sales.

The nature and quality of debtor's receivables is such that this court should not and cannot value them at the face amount due. Instead, even a conservative discount would seem to require that the invoices issued prior to the end of August, 1987 be valued at no more than one-half of their total, or $44,650.00. Even with this discount, the resulting value is undoubtedly generous.

Discounting Debtor's total receivables, on Exhibit 4, of $122,637.00 for those which are of dubious collectability, gives the Bank's receivable collateral a value of $77,987.00. To this must be added the Bank's remaining collateral. For this purpose, the court accepts the Debtor's scheduled value of $252,900.00 for machinery and equipment. Since Debtor is attempting to reorganize under Chapter 11, we will value the raw materials and inventory accordingly, as opposed to using a lower liquidation value. *See Bank Hapoalim B.M. v. E.L.I. Ltd.*, 42 B.R. 376, 379 (Bankr.E.D.Ill.1984). Mr. Reed's testimony at the Rule 2004 exam indicates that the Debtor's raw materials and supplies have a value, at cost, of $158,200.00. He placed a value of slightly less than $75,000.00 on Debtor's inventory, based upon its sale price. Using these numbers, the value of the Bank's collateral does not exceed $564,087.00. The amounts due Plaintiff exceed this value. The Bank is undersecured and the Debtor has no equity in the property securing payment of its claim.

Since the Debtor has no equity in the Bank's collateral, it is appropriate to consider relief from the automatic stay, pursuant to § 362(d)(2), before addressing the question of adequate protection. The requirements of § 362(d) are alternative. Accordingly, unless the collateral is "necessary to an effective reorganization" the automatic stay must be terminated, regardless of the question of adequate protection.

Hope springs eternal in the heart of a Chapter 11 debtor. Unfortunately, it is often a vain hope. "[I]n the vast majority of Chapter 11 cases, the statutory objective of reorganization cannot be realized. The challenge to the bankruptcy courts is to recognize these cases as promptly as possible...." *In re Timbers of Inwood Forest Associates, Inc.*, 808 F.2d 363, 373 n. 17 (5th Cir. en banc 1987), *aff'd*, —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (U.S.1988).

One vehicle by which a secured creditor can test a debtor's ability to fulfill the statutory objective of reorganization is 11 U.S.C. § 362(d)(2). In relevant part, this section provides:

(d) On request of a party in interest and after notice and hearing, the court shall grant relief from the stay ...

\* \* \* \* \* \*

2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have equity in such property; and

(B) such property is not necessary to an effective reorganization.

This section, thus, requires the court to grant relief from the stay if the debtor does not have equity in property which is not necessary to an effective reorganization.

In litigation concerning the automatic stay, the burden of proof placed upon the respective parties is statutorily allocated by § 362(g). Under this subsection, the moving creditor has the responsibility of demonstrating the debtor's equity, or lack thereof, in property. It is the debtor's responsibility to carry the burden of proof on all other issues. Accordingly, "[o]nce the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is 'necessary to an effective reorganization.'" *In re United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, —— U.S. ——, ——, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (U.S.1988) (emphasis original). This requires the debtor to demonstrate "that the property is essential for an effective reorganization *that is in prospect.*" *Timbers*, —— U.S. at ——, 108 S.Ct. at 632 (emphasis original). Consequently, debtor must prove that there is "a reasonable possibility of a successful reorganization within a reasonable time." *Timbers*, —— U.S. at ——, 108 S.Ct. at 632.

"The policy of the Code, as was that of the predecessor statutes, is to encourage reorganization ..." *In re Heatron, Inc.*, 6 B.R. 493, 496 (Bankr.W.D.Mo.1980). Because of this,

[d]eterminations that property is not necessary to an effective reorganization due to the lack of feasibility should not be favored in the early stages of a bankruptcy proceeding. "No one knows whether the debtor can survive until he has done what Chapter 11 affords him the occasion to do." *In re 6200 Ridge, Inc.*, 69 B.R. 837, 843 (Bankr.E.D.Pa. 1984) (citations omitted). *See also Matter of Hollie*, 42 B.R. 111, 118 (Bankr.M. D.Ga.1984).

Beyond this policy, "[a]t the beginning of the reorganization process, the court must work with less evidence than might be desirable ..." *In re Heatron, Inc.*, 6 B.R. at 496. These considerations require the court to resolve uncertainties about the debtor's future in favor of reorganization, if it is reasonably possible to do so. *See In re 6200 Ridge Associates*, 69 B.R. at 843; *In re Heatron*, 6 B.R. at 496.

Just how far a debtor must go in order to demonstrate a reasonable possibility of a successful reorganization is, therefore, measured on a sliding scale. During the early stages of a proceeding, a less detailed showing may succeed. *See Timbers*, —— U.S. at ——, 108 S.Ct. at 632–33. The same proof at a later time, however, may be insufficient.

■ To prevail under § 362(d)(2), the debtor is not required to prove it has proposed a plan, much less one which is acceptable to creditors. *In re Playa Development Corp.*, 68 B.R. 549, 555 (Bankr.W. D.Tex.1986); *In re Jug End in the Berkshires, Inc.*, 46 B.R. 892, 902 (Bankr.D. Mass.1985); *In re Saypol*, 31 B.R. 796, 803 (Bankr.S.D.N.Y.1983). "At the same time, however, the debtor is obliged to make some showing that a reorganization is possible." *In re 6200 Ridge, Inc.*, 69 B.R. at 843. "The court should not, at the conclusion of the debtor's case, be left to speculate about important elements and issues relating to the likelihood of an effective reorganization." *In re Anderson Oaks Limited Partnership*, 77 B.R. 108, 110 (Bankr.W.D.Tex.1987).

■ This matter was tried approximately two months after Debtor's petition was filed. Accordingly, we are impelled to apply the "standard with somewhat more indulgence than would be appropriate if the motion were made at a later stage in the proceedings." *In re Timbers*, 808 F.2d at 371. It is neither possible nor proper to transform a request for relief from stay into a thorough inquiry on the feasibility of a plan which has yet to be proposed. *See In re Anderson Oaks Limited Partner-*

*ship,* 77 B.R. at 111. "Nonetheless, the 'effective reorganization' standard must be given meaning..." *In re Timbers,* 808 F.2d at 371. Thus, "the debtor must do more than evince high hopes." *In re Timbers,* 808 F.2d at 371. "[A] 'mere financial pipe dream' is insufficient to meet the requirements of § 362(d)(2)." *In re Jug End in the Berkshires,* 46 B.R. at 902. *See also In re 6200 Ridge, Inc.,* 69 B.R. at 843. In the same fashion, sincerity, honesty, willingness, and visionary promises will not support a conclusion that there is reasonable possibility of a successful reorganization. *In re Foss,* 76 B.R. 719, 725 (Bankr. D.N.D.1987) (discussing the reasonable likelihood of rehabilitation pursuant to 11 U.S.C. § 1112(b)(1)) (citing *In re Clarkson,* 767 F.2d 417, 420 (8th Cir.1985)). Instead, "[t]he automatic stay will remain operative ... only if the debtor can demonstrate that its prospects of an effective reorganization are well founded ..." *In re Playa Development Corp.,* 68 B.R. at 555. Consequently, a debtor must do more than merely assert that it can reorganize if only given the opportunity to do so. These assertions must have some foundation "based upon objective fact." *In re Foss,* 76 B.R. at 725.

■ This is especially so when the creditor presents evidence which casts substantial doubt on the possibility that the debtor may be able to reorganize. Confronted with such evidence, the debtor must, at a minimum, provide some kind of map which charts a path through Chapter 11 to a successful reorganization.

■ Beyond Debtor's assertion to the effect that "we can do it if we try," it offered very limited testimony concerning its ability to successfully reorganize. Essentially, Debtor's plans for doing so consist of the hope or prediction that future sales will increase by at least 40% over those of 1987. Additionally, Debtor's president also testified that its warranty problems have been solved, which will reduce costs (in the form of returns and allowances) by approximately $60,000.00 from last year's levels.

"Such statements do not represent the quality or quantity of evidence necessary for a debtor to meet its burden of proof under § 362 and would appear to amount to little more than [a] 'financial pipe dream' ..." *In re Playa Development Corp., supra,* 68 B.R. at 556.

■ The moving creditor introduced evidence which casts substantial doubt on the debtor's ability to successfully reorganize. In evaluating relief from the stay under § 362(d)(2), the debtor's financial history may be considered. *In re New American Food Concepts, Inc.,* 70 B.R. 254, 257 (Bankr.N.D.Ohio 1987). The creditor introduced this history in the form of Debtor's income statement for the period ending January 1, 1988 (deposition of George Reed, "Exhibit 5"). This exhibit indicates Debtor lost more than $234,000.00 in 1987, on sales of slightly more than $1,000,-000.00. The schedules indicate this loss was incurred while the Debtor simultaneously neglected to pay almost $43,000.00 in withholding taxes, due the United States of America and the State of Indiana, and almost $106,000.00 in debts due trade creditors. An additional $129,500.00 in unsecured debts are owed to creditors who appear to be insiders. Consequently, while debtor's income statement shows a loss of more than $234,000.00, the actual loss would appear to be more than twice this amount, due to accrued but unpaid obligations.

■ In seeking to determine whether or not a debtor has a reasonable possibility of a successful reorganization, the court may, but is not required to, hypothesize a potential plan for the debtor. The Eighth Circuit did so when it considered this question in its decision *In re Ahlers,* 794 F.2d 388 (8th Cir.1986). Similarly, the Bankruptcy Court for the District of North Dakota did so when it determined the debtor's likelihood of rehabilitation under § 1112(b)(1). *See In re Foss,* 76 B.R. at 722-24. In this instance, this court has also done so, although the responsibility for making such projections truly rests with the debtor.[1]

---

**1.** Mr. Reed testified that Debtor has prepared written projections of income and expenses for

We have done so, however, in an effort to test the outcome of Debtor's predictions for increased sales and resolved warranty problems, in the event those. predictions may come true.

Debtor's total sales during 1987 were $1,042,215.00. An increase of 40% would result in sales of $1,459,101.00. Since Debtor claims that its warranty and other sales problems have been solved, the court will assume that gross sales will equal net sales and will not make any deduction for returns or allowances, although these components reduced Debtor's total sales by more than $60,000.00 in 1987.

Debtor's cost of goods sold totalled $1,016,591.00 in 1987. Part of this cost, however, appears to be artificial bookkeeping entries as opposed to actual out-of-pocket expenses. Accordingly, from the cost of goods sold, the court has eliminated an inventory write down of $31,000.00 and depreciation of $43,082.00. Another component of the total cost was interest, $63,-291.00. Because interest paid to creditors can be affected by the terms of a Chapter 11 plan, this component should also be eliminated. This results in an adjusted cost of goods sold totalling $875,218.00. Since Debtor anticipates increasing its sales volume by 40%, it is reasonable to assume a similar increase in its cost of goods sold ($350,087.00). Accordingly, working from the adjusted figure, it would seem that the increased sales will result in a cost of goods sold totalling $1,225,305.00.

Debtor's selling expenses for 1987 were $103,807.00. Although these expenses will undoubtedly increase, if only in the form of commissions, for the purposes of this exercise the court has assumed that they will remain constant. Administrative expenses for 1987 totalled $100,274.00. Of this amount, $4,154.00 represented depreciation and should be taken out of the equation. Accordingly, the actual cost to the Debtor appears to total $96,120.00. Again, the court will assume that these costs will not increase due to the additional sales and there is no evidence that they can be decreased.

The result of these calculations indicates that a 40% increase in Debtor's sales would create a net "profit" of $33,869.00 as follows:

| Income: | |
|---|---|
| Total Sales | $ 1,459,101.00 |
| Expenses: | |
| Cost of goods sold | (1,225,305.00) |
| Selling expenses | (103,807.00) |
| Administrative expenses | (96,120.00) |
| Profit: | $ 33,869.00 |

This "profit" represents only the money that would be available to the Debtor after paying the costs associated with remaining open, producing and selling its product. It does not consider the additional expense of paying priority, secured, or unsecured creditors under any potential plan of reorganization. Instead, it is this $33,869.00 which would fund such a plan and repay those creditors.

It is the court's opinion that the money available to Debtor, even if its most optimistic predictions for the future come true, will be inadequate to fund a confirmable plan. Even if the Debtor is able to increase sales as it hopes, the business will not be able to generate enough income to service its debt. *See In re Rosey, supra,* at 189.

Debtor contends that all of the collateral securing payment of its debt to movant is necessary for an effective reorganization and must be retained in order to survive. Consequently, even if we completely discount the receivables, Debtor would still have to propose a plan which could repay more than $477,200.00 to this creditor. This is the total of the scheduled value of debtor's machinery and equipment, inventory, and raw materials. If Debtor could ignore the priority claims of the United States of America and the State of Indiana and dedicate all available money to the Bank, it would take more than fourteen years to pay the amount due, without interest. Assuming the claim could be paid with interest as low as 7%, in monthly payments equal to $1/12$ of debtor's projected annual funds, it would take more than 90

1988. These projections were not, however, dis-     cussed further or offered into evidence.

years to do so.[2] Consequently, if all Debtor's dreams come true, it does not appear that it will be able to propose a plan which would comply with § 1129 of the Bankruptcy Code.

Under these circumstances it cannot be said that the Debtor has demonstrated a reasonable likelihood of a successful reorganization,

> Where it appears from the evidence that no proposed plan could realistically surmount the obligations imposed by § 1129(a), it follows that no effective *reorganization* is possible. *In re Anderson Oaks Limited Partnership*, 77 B.R. at 111 (emphasis original).

Accordingly, Creditor's complaint for relief from stay must be granted and the Debtor's application to use cash collateral must be denied. Additionally, the preliminary injunction of January 15, 1988 should be made permanent. In reaching this conclusion, the court is fully cognizant of the consequences of its decision. We are crushing even the Debtor's vain hope for reorganization. To do otherwise, however, would "serv[e] no purpose but to temporarily shelter the Debtor from the inevitable." Id.

At trial the court heard only the evidence and arguments relating to Debtor's inventory, accounts receivable, and cash collateral. The issues directed toward machinery and equipment were to be scheduled for trial at a later date. In view of the determination that there is no reasonable possibility of a successful reorganization within a reasonable amount of time, it appears that the creditor should be relieved of the automatic stay as to this property as well. Accordingly, unless objections are made within ten (10) days of this date, such an order will be entered, without further notice or hearing.

Because of the court's determination under 11 U.S.C. § 362(d)(2), it is not necessary to consider relief from the automatic stay due to the lack of adequate protection, pursuant to 11 U.S.C. § 362(d)(1).

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiff, American State Bank, be and hereby is relieved of the automatic stay, as to Debtor's inventory, raw materials, and accounts receivable and that Debtor's application for authority to use cash collateral be and hereby is DENIED.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the preliminary injunction issued by this court on January 15, 1988 become permanent.

IT IS FURTHER, ORDERED, ADJUDGED, AND DECREED that unless objections are filed within ten (10) days of this date, the court will enter an order relieving the Plaintiff, American State Bank, of the automatic stay, as to Debtor's machinery and equipment, without further notice or hearing.

---

**2.** For comparison, according to the Federal Reserve Statistical Release of February 1, 1988, the interest rate on 30 year obligations of the United States Government, on January 29, 1988, was 8.42%. Ten year government obligations, on this same date, paid interest of 8.26%.