In the Matter of APEX PHARMACEUTICALS, INC.

AMERICAN NETWORK LEASING, INC., Appellant,

v.

APEX PHARMACEUTICALS, INC., City of Elkhart, and Official Unsecured Creditors' Committee, Appellees.

Kenneth C. MEEKER, Chapter 11 Trustee.

No. 3:96cv66 AS.

United States District Court, N.D. Indiana, South Bend Division.

Dec. 13, 1996.

ticals, Inc. ("APEX"), and approving a Settlement Agreement submitted by the City of Elkhart ("City" or "Elkhart"), the Official Unsecured Creditors' Committee ("Creditors' Committee"), and debtor APEX. The bankruptcy court's order effectively granted the City of Elkhart's motion for relief from the stay pursuant to 11 U.S.C. § 362(d)(2).

Because ANL failed to move for a stay of the order approving the Settlement Agreement, APEX and creditor Elkhart move to dismiss ANL's appeal on the ground that it has been rendered moot by implementation of the terms of the Settlement Agreement. This court has jurisdiction over ANL's appeal pursuant to 28 U.S.C. § 158(a).

## I. BACKGROUND

The debtor, APEX Pharmaceuticals, Inc., was founded in July of 1992 by the former employees of another pharmaceutical company, Whitehall Laboratories ("Whitehall"), after that company closed its facility at Elkhart, Indiana. APEX leased the former Whitehall property from the City of Elkhart, which had received title to the 450,000 square-foot manufacturing facility from American Home Products Corporation, the parent company of Whitehall, as a donation to help promote the economic development of Elkhart and to provide an opportunity for the re-employment of former Whitehall employees.[1]

APEX received its corporate charter from the State of Indiana on July 14, 1992, and was the surviving corporation following a merger with APEX Laboratories, Inc., a Delaware corporation, on July 17, 1992. Under its lease agreement with the City of Elkhart, APEX was required to pay monthly rent at the rate of $10,000 and all taxes and assessments on the property which became payable during the term of the lease. The terms of the agreement also required APEX to meet increasing employment levels over a five-year period, and to maintain a minimum asset base of $2.5 million. The lease agreement further provided that during the term

American Network Leasing, Inc., Sarasota, FL, pro se.

W. Douglas Thorne, Thorne Grodnik Ransel Duncan Byron and Hostetler, Elkhart, IN, for Apex Pharmaceuticals, Inc.

Paul D. Eash, City Attorney, City of Elkhart, Elkhart, IN, for City of Elkhart.

Jeffery A. Johnson, May Oberfell and Lorber, South Bend, IN, for Official Unsecured Creditors' Committee.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

American Network Leasing, Inc. ("ANL"), an equity security holder and alleged unsecured creditor in the above-captioned Chapter 11 bankruptcy proceeding, appeals from a final decision of the United States Bankruptcy Court rejecting ANL's proposed plan of reorganization for debtor APEX Pharmaceu-

---

1. Under the terms of its agreement with the City of Elkhart, American Home Products Corporation also agreed to deliver a sum of money to assist the City in performing its obligations under the agreement, to be placed in trust until the City transferred ownership of the Whitehall property to an unaffiliated third party.

of the lease, APEX had an option to purchase the former Whitehall property for $3 million while fewer than 408 persons were employed full-time, and for $2 million when employment levels reached 408 full-time employees. In addition to the lease agreement, the City of Elkhart entered into a loan agreement with APEX on October 11, 1993, whereby the City agreed to lend APEX the sum of $666,666.67 in return for a first lien on all assets of the corporation.[2]

Despite the assistance provided by Elkhart in the form of a "below market level" lease rate and the above-described loan, APEX apparently suffered from severe financial constraints and soon began to default on its obligations, failing to pay any of the real estate taxes that came due or to make the required installments on its loan from the City. In November 1994, APEX entered into an agreement with American Network Leasing which provided that ANL would make an equity investment of $2.1 million and provide $5 million in lines of credit or loans for APEX, in return for which it would receive 7,917,568 shares of APEX stock. However, after paying the initial $100,000.00 installment on November 21, 1994, and depositing the second installment of $100,000.00 in escrow on the same date, ANL failed to make either of the payments due in December of 1994. ANL also failed to provide the promised $5 million in financing or to obtain similar credit from third parties. The failed transaction between APEX and ANL is the subject of another lawsuit currently pending in this court.

It appears from the record that APEX never was able to reach either the required employment levels or the minimum asset level, nor did the company apparently ever begin operations at the Elkhart facility. On May 15, 1995, after falling further behind in its lease and loan obligations, APEX filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. At the time of its petition, APEX owed the City $672,031.34 on the loan and $372,259.01 in unpaid property taxes. On June 6, 1995, the City of Elkhart filed a motion to modify the automatic stay under 11 U.S.C. § 362 to retake possession of the manufacturing facility it had leased to APEX. After the City of Elkhart filed two motions to amend the motion to modify the stay—the latter one including a motion for abandonment of the facility—the Creditors' Committee, APEX, and the City entered into a Settlement Agreement, which those parties filed in the bankruptcy court on October 12, 1995. Under the Settlement Agreement, APEX agreed to surrender its interest in the manufacturing facility to the City of Elkhart, in return for which the City agreed to release all of its claims against APEX. The claims surrendered by the City under the Agreement totaled more than $1 million.

The appellant, American Network Leasing, filed an objection to the Settlement Agreement and submitted a proposed plan of reorganization which, instead of requiring APEX to surrender the property, would have reformed the lease between the City of Elkhart and APEX. To accomplish this, ANL offered to supply additional funding through investments in APEX. After notice and an evidentiary hearing, the bankruptcy court overruled ANL's objection and entered an order on November 6, 1995, approving the Settlement Agreement.

American Network Leasing filed its timely notice of appeal from the bankruptcy court's order on November 16, 1995. Although the appellant originally appeared by counsel as required by this court's local rules, that counsel requested and was granted the right to withdraw from representation. Thereafter, further proceedings were held in this court on June 13, 1996, in which ANL's chief executive officer, Kenneth Peterson, was personally present and made statements advancing arguments in favor of the positions taken by the appellant. In practical terms, this court has no way of forcing the appellant to appear by counsel. Moreover, the court is more interested in resolving this complicated dispute on the present state of the record. Therefore, while the court will consider the

---

**2.** Although APEX and the Creditors' Committee initially challenged the secured status of the City's claim on the ground that the security interest was never perfected, that challenge was rendered moot by the bankruptcy court's approval of the Settlement Agreement submitted by those parties and the City of Elkhart.

presentations made by Mr. Peterson during oral argument,[3] this in no sense constitutes a precedent for this court to permit corporations to appear and be represented other than by attorneys admitted to practice before this court.

Following oral argument by the parties, appellees APEX and the City of Elkhart filed a motion to dismiss the appeal for mootness on August 29, 1996. Although Bankruptcy Rule 8011(a) requires a party opposing a motion to file its response within seven days after service, ANL neither filed a response to the motion to dismiss within the time provided nor requested additional time within which to respond. Accordingly, this matter is now ripe for decision.

## II. DISCUSSION

The first issue to be addressed is mootness. Appellees APEX Pharmaceuticals and the City of Elkhart contend that because ANL failed to move for a stay of the bankruptcy court's order approving the Settlement Agreement, its appeal has been rendered moot by implementation of the Agreement's terms. Because the appellees' argument would be dispositive for purposes of the present proceeding if answered in the affirmative, this court must determine as a threshold matter whether ANL's appeal is indeed moot.

### A. Mootness

■ Appellees APEX and Elkhart maintain that even if this appeal were decided in ANL's favor, there is no meaningful relief this court can give to the appellant. Specifically, the appellees point out that APEX, by signing the Settlement Agreement, consented to the City receiving relief from the automatic stay and thereby relinquished any interest APEX had in the real estate. Thereafter, when ANL failed to move for a stay of the order approving the Settlement Agreement (or to post a supersedeas bond to support such a stay pursuant to Bank-

ruptcy Rule 8005), the order took effect and the City of Elkhart proceeded to find a buyer for the property. On July 31, 1996, in return for a substantial down payment, the City conveyed title to the real estate to a company called APG, Inc. ("APG"). Accordingly, the appellees argue in their motion that because APEX's interest in the real estate cannot be restored, there is no possible relief this court could order that would benefit ANL.

■ To the extent APEX and the City of Elkhart believe that this appeal is moot in the sense that relief is impossible (so that there is no case or controversy within the scope of Article III of the Constitution of the United States), they overstate matters. It is true that an appeal is considered moot if an event occurs "that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (internal citations omitted). However, even where the circumstances make it impossible to restore the parties to their former positions, a case is not moot when the court can still fashion some type of relief. *In re Envirodyne Indus., Inc.*, 29 F.3d 301, 304 (7th Cir.1994); *In re UNR Indus., Inc.*, 20 F.3d 766, 769 (7th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 509, 130 L.Ed.2d 416 (1994).

In the present case, the degree of relief possible depends upon the state of title to the property. Even assuming that APG is a bona fide purchaser for value as the appellees contend, the court nonetheless could achieve partial relief by ordering the bankruptcy judge to modify his order approving the Settlement Agreement: To the extent that APEX's creditors (including appellant ANL) lost benefits as a result of the sale of the former Whitehall property, the bankruptcy court could order the City of Elkhart to pay a portion of the proceeds to APEX for distribution to its creditors. Whether that

---

**3.** During oral argument, Mr. Peterson attempted to argue that ANL did not receive notice of the City's motion to lift the stay and for abandonment of the property. That issue, while mentioned in the appellant's brief in describing the proceedings below, was neither raised in the appellant's statement of the issue presented on appeal nor argued anywhere in the appellate brief. Accordingly, this court will not address the merits of Mr. Peterson's lack-of-notice argument.

*should* be done is another matter. The point is that the ability of the court to fashion *some kind* of relief means that the appeal is not moot in the constitutional sense.

■ However, even where the moving party is not entitled to dismissal on the ground that there is no "case or controversy" within the meaning of Article III, common sense or equitable considerations may nonetheless justify a decision not to reach the merits of a case. This is particularly true in the context of bankruptcy appeals, where strong policy concerns counsel against delaying implementation of court-approved reorganization plans unless the objecting party obtains a stay. Although a number of courts have treated this discretionary approach in reorganization cases as the second part of a twofold approach to the mootness doctrine (*i.e.*, "equitable mootness"), Judge Easterbrook recently banished that term from use in this circuit, noting that "[t]here is a big difference between inability to alter the outcome (real mootness) and unwillingness to alter the outcome ('equitable mootness')." *In re UNR*, 20 F.3d at 769.

■ Notwithstanding that the mootness doctrine does not encompass notions of equity, it remains true that a court, in deciding whether to modify a previously implemented reorganization plan, must consider the effects of any relief on innocent third parties. *In re Envirodyne*, 29 F.3d at 304. Thus, the equitable standards relied upon by other circuits under the rubric of "equitable mootness" have lost none of their vitality. In deciding whether to modify such a plan, the test is whether "implementation of the plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available." *In re Andreuccetti*, 975 F.2d 413, 418 (7th Cir.1992) (quoting *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 841 F.2d 92, 96 (4th Cir. 1988)). This test "reflects a court's concern for striking the proper balance between the equitable considerations of finality and good faith reliance on a judgment and the competing interests that underlie the right of a party to seek review of a bankruptcy court

order adversely affecting him." *Id.* (quoting *First Union Real Estate Equity and Mortgage Invs. v. Club Assocs. (In re Club Assocs.)*, 956 F.2d 1065, 1069 (11th Cir.1992)). Accordingly, "a plan of reorganization, once implemented, should be disturbed only for compelling reasons." *In re UNR*, 20 F.3d at 769.

It might be, as the appellees argue, that reliance on the Settlement Agreement has made it imprudent to revise things at this point. Indeed, the appellant's failure to seek a stay pending this appeal counsels against upsetting the Settlement Agreement. *See id.* However, the record on appeal is not adequate to decide whether modification of the Agreement at this time would bear unduly on the innocent: there is nothing in the record that would permit the court to determine whether APG was indeed a bona fide purchaser of the former Whitehall property. Moreover, even if the record on appeal were sufficient to determine APG's status with regard to ownership of the property, the court would be unable to grant even partial relief to ANL without first remanding the case to the bankruptcy court for additional findings of fact, since there is no means by which this court could determine the amount of any benefits arguably lost as a result of the sale of the property.

Therefore, if there were doubts about the merits of the court-approved Settlement Agreement (or the lack thereof), so that the issue of modification of the Agreement might be dispositive, the court would be forced to remand the case to the bankruptcy court for further factual findings. However, because this court has no doubts about the merits of the Agreement, and since the equitable doctrine formerly known as "equitable mootness" is not a jurisdictional doctrine (unlike the "real" doctrine of mootness), it is appropriate to sidestep equitable concerns and come directly to the issue presented on appeal.

### B. Merits

Appellant American Network Leasing argues that the bankruptcy court erred in overruling its objection to the Settlement Agreement submitted by APEX, the City of

Elkhart, and the Creditors' Committee. Specifically, the appellant contends that its proposed plan of reorganization offered markedly better benefits to creditors than those available under the Settlement Agreement, and that the bankruptcy court's decision that ANL had failed to demonstrate a reasonable possibility of a successful reorganization within a reasonable time was clearly erroneous. Finally, because the decision approving the Settlement Agreement effectively lifted the automatic stay pursuant to 11 U.S.C. § 362(d)(2), ANL argues that the bankruptcy court abused its discretion.

### 1. Standard of Review

■ In reviewing a bankruptcy court's decision pursuant to 28 U.S.C. § 158(a), the district court functions as an appellate court and is authorized to affirm, reverse, modify, or remand the bankruptcy court's ruling. FED.R.BANKR.P. 8013. District courts review factual findings in bankruptcy cases under a clearly erroneous standard, while conclusions of law are reviewed *de novo*. *In re Sheridan*, 57 F.3d 627, 633 (7th Cir.1995); *Magill v. Newman (In re Newman)*, 903 F.2d 1150, 1152 (7th Cir.1990). The United States Court of Appeals for the Seventh Circuit has held that a decision granting or denying a motion to lift the automatic stay pursuant to 11 U.S.C. § 362(d) may be overturned only upon a showing that the bankruptcy court abused its discretion. *See Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 507 (7th Cir.1982) (applying § 362(d)(1)).

In the present case, the bankruptcy court based its decision to approve the Settlement Agreement—and thus to lift the stay—upon a finding that ANL had failed to demonstrate a reasonable possibility of a successful reorganization within a reasonable time pursuant to 11 U.S.C. § 362(d)(2)(B). None of the § 362(d) cases reported by the Seventh Circuit have involved a decision in which relief was granted under § 362(d)(2). *See In re C & S Grain Co., Inc.*, 47 F.3d 233, 238 (7th Cir.1995); *In re McGaughey*, 24 F.3d 904, 907 (7th Cir.1994); *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir.1985); *In re Holtkamp*, 669 F.2d at 507. However, some courts have held that the decision to grant relief under § 362(d)(2) is not purely discretionary, and that the standard of review therefore differs in scope from that applied in the context of § 362(d)(1). *See Gateway North Estates, Inc. v. Bailey (In re Gateway North Estates, Inc.)*, 169 B.R. 379, 382 (E.D.Mich.1994); *Watford v. South Cent. Farm Credit*, 159 B.R. 597, 600 (M.D.Ga. 1993), *aff'd*, 61 F.3d 30 (11th Cir.1995); *Lomas Mortgage USA v. Fischer (In re Fischer)*, 136 B.R. 819, 824 (D.Alaska 1992). This court cannot agree.

■ While it is true that the necessary conditions under § 362(d)(2) are defined with some precision,[4] whereas § 362(d)(1) simply asks whether "cause" has been shown, that fact does not alter the standard of review. First, a bankruptcy court must base its decision under *either* provision on factual findings which are subject to review for clear error. FED.R.BANKR.P. 8013; *see In re Ward*, 837 F.2d 124, 128 (3d Cir.1988); *Sun Valley Ranches, Inc. v. Equitable Life Assurance Soc'y (In re Sun Valley Ranches, Inc.)*, 823 F.2d 1373, 1376 (9th Cir.1987); *J.H. Streiker & Co., Inc. v. SeSide Co., Inc. Ltd. (In re SeSide Co., Ltd.)*, 155 B.R. 112, 117 (E.D.Pa.1993); *In re 8th St. Village Ltd. Partnership*, 94 B.R. 993, 998 (N.D.Ill.1988). Second, the abuse of discretion standard itself includes an inquiry into the reliability of the bankruptcy court's factual findings: "[A] judge abuses his discretion when his decision is based on an erroneous conclusion of law or

---

4. Section 362(d) provides in relevant part:
 **(d)** On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

 . . . . .

 **(2)** with respect to a stay of an act against property under subsection (a) of this section, if—

 **(A)** the debtor does not have an equity in such property; and
 **(B)** such property is not necessary to an effective reorganization.
 11 U.S.C. § 362(d)(2) (1994).

where the record contains no evidence on which he rationally could have based that decision, *or where the supposed facts found are clearly erroneous....*" *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 563–64 (7th Cir.1984) (citation omitted) (emphasis supplied); *see Wheeler v. Sims,* 951 F.2d 796, 802 (7th Cir.), *cert. denied,* 506 U.S. 914, 113 S.Ct. 320, 121 L.Ed.2d 241 (1992).

■ Thus, notwithstanding that the conditions to be satisfied pursuant to § 362(d)(2) are stated with relative precision, this court holds that a decision lifting the stay pursuant to § 362(d)(2) is subject to the same standard of review as a decision under § 362(d)(1)—abuse of discretion. *See Stephens Indus., Inc. v. McClung,* 789 F.2d 386, 391 (6th Cir.1986); *Bialac v. Harsh Inv. Corp. (In re Bialac),* 694 F.2d 625, 627 (9th Cir.1982); *Edgewater Walk Apartments v. MONY Life Ins. Co.,* 162 B.R. 490, 496–97 (N.D.Ill.1993), *modified on other grounds,* 1993 WL 525485 (N.D.Ill.Dec. 10, 1993); *In re 8th St. Village,* 94 B.R. at 998. Accordingly, while the bankruptcy court's factual finding that ANL has not shown a reasonable possibility of a successful reorganization must be reviewed for clear error, the court's overall decision approving the Settlement Agreement (and thereby lifting the stay) is subject to review under the abuse of discretion standard.

### 2. Analysis

■ Section 362(d)(2) of the Bankruptcy Code provides that the bankruptcy court shall lift the automatic stay upon request of a party in interest if the debtor has no equity in the relevant property and such property is "not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2)(B) (1994). Although Congress enacted § 362(d)(2) primarily to alleviate the problem of bankruptcy petitions filed on the eve of mortgage foreclosures, the provision is equally applicable in deciding the merits of a creditor's objection to a settlement agreement which, if accepted by the court, would effectively lift the stay. Because it was undisputed in the bankruptcy court proceeding that APEX had no equity in

the former Whitehall property, the burden was on ANL to prove that the property was "necessary to an effective reorganization." *Id.; see id.* § 362(g)(2) (1994). The bankruptcy court concluded that ANL had failed to meet its burden.

■ In *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), the Supreme Court of the United States addressed the type of finding required under § 362(d)(2)(B) to demonstrate that property is necessary to a successful reorganization:

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts ... have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." ... And while the bankruptcy courts demand less detailed showings during the four months in which the debtor is given the exclusive right to put together a plan, *see* 11 U.S.C. §§ 1121(b), (c)(2), even within that period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief.

*Timbers of Inwood Forest,* 484 U.S. at 375–76, 108 S.Ct. at 633 (citations omitted) (emphasis in original) (alterations supplied). It follows from the Supreme Court's discussion of § 362(d)(2)(B) that if no effective reorganization is in prospect, "then no property of the debtor can be necessary for that end." *Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.),* 16 F.3d 552, 567 (3d Cir.1994) (citation omitted); *see Albany Partners Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 673 n. 7 (11th Cir.1984) ("[T]he mere fact that the property is indispensible to the debtor's survival is insufficient.").

The appellant agrees that the "feasibility" standard set out in *Timbers* is the proper interpretation of § 362(d)(2)(B),[5] but con-

---

5. Although *Timbers* involved a question under § 362(d)(1) rather than § 362(d)(2), the Court's discussion of the type of showing necessary un-

der § 362(d)(2)(B) was an integral, well-developed part of its decision and thus probably should not be regarded as non-binding dictum.

tends that the bankruptcy court misapplied the *Timbers* standard by concluding that ANL's proposed plan of reorganization failed to demonstrate a reasonable likelihood of success within a reasonable time. Specifically, ANL points to the less detailed showing required of a debtor during the early stages of a bankruptcy proceeding (the so-called "sliding scale" approach), and argues that it too was entitled to application of a lighter burden by virtue of filing its proposed reorganization plan within the first forty-five days after the debtor's exclusive period in which to file a plan ended. The appellant contends that the bankruptcy court, in applying the lighter burden, should have found that ANL had met its burden of demonstrating that the Whitehall property was necessary to an effective reorganization which was in prospect.

 It is true that during the initial 120–day period in which debtors have an exclusive right to file a plan of reorganization, *see* 11 U.S.C. §§ 1121(b), (c)(2) (1994), the bankruptcy courts apply a lesser standard in determining whether the burden of showing "a reasonable possibility of a successful reorganization within a reasonable time" has been satisfied:

> Determinations that property is not necessary to an effective reorganization due to the lack of feasibility should not be favored in the early stages of a bankruptcy. No one knows whether the debtor can survive until he has done what Chapter 11 affords him occasion to do: clean house and work out a plan. For this reason, uncertainties should be resolved in the debtor's favor during the period in which the debtor is entitled to file a plan of reorganization.

*In re 6200 Ridge, Inc.,* 69 B.R. 837, 843 (Bankr.E.D.Pa.1987) (citations omitted); *see Timbers of Inwood Forest,* 484 U.S. at 376, 108 S.Ct. at 633; *Edgewater Walk Apartments,* 162 B.R. at 499–500; *In re 160 Bleecker St. Assocs.,* 156 B.R. 405, 411 (S.D.N.Y.1993); *Sumitomo Trust & Banking Co., Ltd. v. Holly's, Inc. (In re Holly's, Inc.),* 140 B.R. 643, 701–02 (Bankr.W.D.Mich.1992); *In re Ashgrove Apartments of DeKalb County, Ltd.,* 121 B.R. 752, 756 (Bankr.S.D.Ohio 1990); *American State Bank v. Grand Sports, Inc. (In re Grand Sports, Inc.),* 86 B.R. 971, 974 (Bankr.N.D.Ind.1988). Thus, if a creditor requests relief from the stay in the early stages of a bankruptcy case, the burden upon the debtor is less stringent than it would be later in the proceeding.

However, this court is unable to find any reported decision in which a court has held that the same approach applies to creditors who submit proposed plans of reorganization after the debtor's exclusive period has ended.[6] Indeed, the appellant's argument to that effect misconstrues the purpose underly-

---

However, even if *Timbers'* discussion of § 362(d)(2)(B) is arguably dictum, it is important to note that every circuit court of appeals which has considered the application of § 362(d)(2)(B)—both before *Timbers* and after—has held that the feasibility standard is the proper standard to apply. *See In re Swedeland Dev. Group, Inc.,* 16 F.3d 552, 567 (3d Cir.1994); *Canal Place Ltd. Partnership v. Aetna Life Ins. Co. (In re Canal Place Ltd. Partnership),* 921 F.2d 569, 576 (5th Cir.1991); *Anderson v. Farm Credit Bank of St. Paul (In re Anderson),* 913 F.2d 530, 532 (8th Cir.1990); *Sun Valley Ranches, Inc. v. Equitable Life Assurance Soc'y (In re Sun Valley Ranches, Inc.),* 823 F.2d 1373, 1376 (9th Cir. 1987); *Grundy Nat'l Bank v. Tandem Mining Corp.,* 754 F.2d 1436, 1440 (4th Cir.1985); *Albany Partners, Ltd. v. Westbrook (In re Albany Partners, Ltd.),* 749 F.2d 670, 673 n. 7 (11th Cir. 1984). Where, as here, the Seventh Circuit has yet to consider a particular issue, this court must give "respectful consideration to the decisions of the other courts of appeals." *Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1123 (7th Cir.1987).

6. The bankruptcy court appears to suggest in its Decision and Order that the "sliding scale" approach applies to creditors as well as debtors. *See* Bankr.Decision and Order (Nov. 6, 1995) at 14–15. To the extent the bankruptcy court relies upon the Supreme Court's *Timbers* decision as support for that premise, this court cannot agree. While it is perhaps true that a creditor who seeks to reorganize a debtor bears a lighter burden when demonstrating the possibility of an effective reorganization under § 362(d)(2)(B) than when submitting a plan for confirmation at a full-fledged confirmation hearing, the "sliding scale" approach to which the appellant refers— quoting the *Timbers* decision—is an analytical device used by the bankruptcy courts to balance between the reasonableness of the delay borne by creditors and the debtor's ability to formulate a plan *during the four months in which the debtor is given the exclusive right to put together a plan.* *See Timbers of Inwood Forest,* 484 U.S. at 376, 108 S.Ct. at 633.

ing the "sliding scale" approach. Courts applying that analysis do so for reasons that have no relevance once the debtor's exclusive right to file a plan has ended: During the early stages of a bankruptcy case, the court "must work with less evidence than might be desirable and should resolve issues in favor of the reorganization where the evidence is conflicting" to ensure that the debtor is given the "breathing room" Congress intended the stay to provide. *In re Heatron, Inc.,* 6 B.R. 493, 496 (Bankr.W.D.Mo.1980); *see Anderson v. Farm Credit Bank of St. Paul (In re Anderson),* 913 F.2d 530, 533 (8th Cir.1990); *In re 160 Bleecker St. Assocs.,* 156 B.R. at 411; H.R.REP. No. 95–595, 95th Cong. 1st Sess. 340 (1977), *reprinted in* 1978 U.S.C.C.A.N 5787, 6296–97. Thus, the use of a "sliding scale" burden of proof is intended to benefit debtors who have a realistic chance of reorganization but who have not had sufficient time to formulate a confirmable plan. *See Travelers Life and Annuity Co. v. Ritz–Carlton of D.C., Inc. (In re Ritz–Carlton of D.C., Inc.),* 98 B.R. 170, 172 (S.D.N.Y.1989) ("The feasibility test does not require that the debtor show that its reorganization plan is confirmable."); *In re Holly's, Inc.,* 140 B.R. at 701 ("[T]he debtor's plan can be somewhat obscure or vague as long as it is plausible that a successful reorganization may occur."); *In re Grand Sports, Inc.,* 86 B.R. at 975 ("It is neither possible nor proper to transform a request for relief from stay into a thorough inquiry on the feasibility of a plan which has yet to be proposed."); *cf. In re Anderson,* 913 F.2d at 532 ("sliding scale" approach did not apply to debtor who had long known of bank's foreclosure efforts and had filed a Chapter 12 petition more than six months before hearing).

Moreover, to apply the "sliding scale" analysis to a creditor's proposed plan of reorganization after the expiration of the 120–day initial period would serve no comparable purpose and, indeed, could conceivably lead to the creditor's plan being examined under a lighter burden of proof than that which would be applied to any plan submitted by the debtor at that point. *See In re Holly's, Inc.,* 140 B.R. at 702 ("A moving target burden of proof requires that the debtor must provide *the most stringent and*

*convincing showing* under § 362(d)(2)(B) after the expiration of the exclusivity periods to file a plan and obtain acceptance thereof.") (emphasis supplied); *see also Edgewater Walk Apartments,* 162 B.R. at 500 ("It seems reasonable to expect a debtor to present a fairly concrete proposal at the point when other parties would be allowed to submit competing plans."). Such a result cannot have been intended by the courts which developed the "sliding scale" approach. *See In re Holly's, Inc.,* 140 B.R. at 702 ("After the expiration of the exclusivity period, the balance between the reasonableness of the delay borne by a secured creditor and the debtor's ability to formulate a plan favors the creditor [and lifting the stay]."). Indeed, the fact that a creditor who seeks to reorganize a debtor is precluded from presenting a plan to the bankruptcy court during the first 120 days after the petition in no way deprives the creditor of the opportunity to actively seek information and prepare a proposed plan of reorganization during that time. Accordingly, this court does not believe that ANL was entitled to have its plan examined under the "sliding scale" approach which is applied to debtors' plans during their exclusive filing period.

The appellant's proposed plan of reorganization provided in relevant part that (1) ANL would pay $1 million for the assets and stock of APEX; (2) the lease agreement between the debtor and the City would be reformed to allow APEX to assume the lease and then assign it to ANL; and (3) ANL would make certain limited payments to various classes of claims. In addition, the plan provided for dismissal of APEX's pending federal court lawsuit against ANL and its chief executive officer, Kenneth Peterson, in the matter of the failed pre-petition transaction between APEX and ANL. Mr. Peterson testified at the evidentiary hearing that funding for the proposed reorganization would be provided by RAF Financial Corporation ("RAF") of Denver, Colorado.

In determining that ANL had failed to meet its burden under § 362(d)(2)(B), the bankruptcy court based its decision on three primary factors. First, the court noted that notwithstanding the testimony of Mr. Peter-

son and RAF's representative, Russell Burk, regarding the likelihood of funding a plan of reorganization, it could not help wondering where ANL's financing was two years earlier when APEX's financial picture began to rapidly dissolve. Second, the court pointed out that despite ANL's knowledge of APEX's bankruptcy and its professed desire to reorganize the company, ANL had failed over the course of four months to obtain even a minimal amount of financing to provide adequate protection to the City of Elkhart. Finally, and perhaps most importantly, the bankruptcy court concluded that ANL had failed to show how it intended to reorganize a company which had never shown that it could operate effectively within the pharmaceutical industry.

■ Even assuming, *arguendo,* that the appellant was entitled to have the same lighter burden applied to its proposed plan of reorganization that bankruptcy courts apply to debtors' plans during their exclusive filing period, this court cannot say the bankruptcy court's finding that ANL had failed to show "a reasonable possibility of a successful reorganization within a reasonable time" was clearly erroneous. First, a debtor's prior performance is probative evidence of the feasibility of a plan of reorganization, especially where a primary creditor has worked closely with the debtor in an attempt to encourage greater cash flow. *See Canal Place Ltd. Partnership v. Aetna Life Ins. Co. (In re Canal Place Ltd. Partnership),* 921 F.2d 569, 579 (5th Cir.1991); *In re Atrium High Point Ltd. Partnership,* 189 B.R. 599, 609 (Bankr. M.D.N.C.1995); *In re Grand Sports, Inc.,* 86 B.R. at 975. The test for clear error is not whether a different conclusion would be appropriate, but whether "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994) (quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)); *In re Love,* 957 F.2d 1350, 1354 (7th Cir.1992). In light of the evidence of the debtor's past performance, this court is left with no such conviction.

■ Second, while it is true that a party advocating reorganization need not show at the § 362(d)(2) hearing that its plan is confirmable, that party nonetheless bears the burden of showing that the things which are proposed to be done after confirmation can be done as a practical matter. *In re 160 Bleecker St. Assocs.,* 156 B.R. at 411; *In re Ritz–Carlton of D.C., Inc.,* 98 B.R. at 172. Although Kenneth Peterson of ANL testified at the evidentiary hearing that funding for the proposed reorganization would be provided by RAF Financial Corporation ("RAF"), both Peterson and RAF representative Russell Burk admitted that negotiations were still in progress and that no agreement on the matter of funding had actually been reduced to writing. Indeed, Mr. Burk testified at the hearing that RAF had not even decided by what means it would generate capital for APEX, and that procurement of such funding could take as long as 120 days. Further, both Peterson and Burk admitted that the non-economic defaults under the lease— *i.e.,* minimum employment levels—would not be cured by ANL's proposed plan of reorganization.

Certainly ANL's previous inability to provide APEX with financial assistance, together with its failure to obtain minimal protection for the City of Elkhart after the petition was filed, are probative of whether the things proposed to be done after confirmation can be done as a practical matter. "The question . . . is not whether every aspect of [the] proposed plan would be sustained over objections at confirmation, but rather, whether there is a reasonable likelihood that the debtor will have the financial means available to obtain confirmation of a plan which is being proposed, subject to permissible preconfirmation modifications." *In re Northgate Terrace Apartments, Ltd.,* 126 B.R. 520, 524–25 (Bankr.S.D.Ohio 1991).

■ A district court should be particularly reluctant to disturb findings of the bankruptcy court, like those here, which are based heavily on testimonial evidence. The bankruptcy court is simply in a much better position to determine the credibility of such evidence. Accordingly, this court cannot fault the bankruptcy court's decision that, in

light of the evidence adduced, an effective reorganization within a reasonable time was unlikely to occur. *See Anderson v. City of Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

■■■ Moreover, even if there were questions about the credibility of the evidence regarding the debtor's past performance or the appellant's financial ability to fund a reorganization of the debtor, the record provides alternate grounds for the bankruptcy court's decision. Although Article X of the proposed reorganization plan provides that the debtor will assume the lease between APEX and the City of Elkhart and "take whatever steps are necessary" to assign the lease to ANL, the plan apparently ignores the requirements of § 365(b)(1) of the Bankruptcy Code, pursuant to which a debtor must bring an unexpired lease out of default and give adequate assurance that future performance under the lease will occur as a precondition to assumption of the lease. 11 U.S.C. § 365(b)(1) (1994). Here, the appellant's plan provides for payment of the amount required to bring the lease out of default "on or before 5 months after the Distribution Date," and defines the "Distribution Date" as "the date upon which the Order of Confirmation is no longer subject to appeal." Given these circumstances, the bankruptcy court's decision that ANL had failed to establish "a reasonable possibility of a successful reorganization within a reasonable time" cannot be clearly erroneous. Finally, both ANL's fellow creditors and debtor APEX are fundamentally opposed to the terms of the appellant's proposed reorganization plan in light of its deficiencies. Relief from the stay is appropriate where there is no reasonable likelihood of reorganization due to creditor dissent. *In re Canal Place Ltd. Partnership,* 921 F.2d at 576; 2 COLLIER ON BANKRUPTCY ¶ 362.07 at 362–73 (15th ed. 1996).

■■■ A creditor who seeks to reorganize a Chapter 11 debtor must do more than demonstrate sincerity, honesty and willingness to show that its proposed plan is feasible. *See Clarkson v. Cooke Sales and Serv. Co. (In re Clarkson),* 767 F.2d 417, 420 (8th Cir.1985); *In re Ziebarth,* 113 B.R. 591, 598 (Bankr.N.D.1990). Where the evidence of record casts substantial doubt on the possibility of reorganization, the party proposing the reorganization "must, at a minimum, provide some kind of map which charts a path through Chapter 11 to a successful reorganization." *In re Grand Sports, Inc.,* 86 B.R. at 975. Although ANL presented evidence that funding for the proposed reorganization was "in the works," the bankruptcy court concluded on the totality of the evidence that ANL's plan of reorganization was nothing more than wishful thinking at that stage of the proceedings. While this court has no doubt that the appellant's representatives truly believe that a reorganization is both feasible and more beneficial to APEX's creditors (than the Settlement Agreement approved by the bankruptcy court), the record does show that operation of the pharmaceutical company has historically been problematic, and that the promised funding from RAF was, at best, speculative at the time of the hearing on the Settlement Agreement. Accordingly, this court will not disturb the bankruptcy court's finding that the proposed reorganization was infeasible and, thus, the property was "not necessary to an effective reorganization."

■■■ The bankruptcy court determined that in light of the property taxes which continued to accrue and the amount of time which had passed since the debtor filed its Chapter 11 petition, the best interests of all parties would be served by approving the Settlement Agreement and, thus, lifting the automatic stay. As discussed above, this decision is reviewable for abuse of discretion. "Under the 'abuse of discretion' standard of review, the relevant inquiry is not how the reviewing judge[ ] would have ruled if [he] had been considering the case in the first place, but rather, whether *any* reasonable person could agree with the [court]." *Deitchman,* 740 F.2d at 563 (emphasis in original) (alterations supplied); *Edgewater Walk Apartments,* 162 B.R. at 497. The bankruptcy court did not abuse its discretion here.

## CONCLUSION

The motion of appellees APEX and the City of Elkhart to dismiss this appeal for mootness is **DENIED.** For the reasons described above, the bankruptcy court's decision overruling the appellant's objection and approving the Settlement Agreement submitted by the City of Elkhart, the Official Unsecured Creditors' Committee, and debtor APEX is **AFFIRMED.** This appeal is **DISMISSED. IT IS SO ORDERED.**